IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LACK'S STORES, INCORPORATED, | § | CASE NO. 10-60149 |
| | § | |
| DEBTOR. | § | (Chapter 11) |
| | § | |
| IN RE: | § | |
| | § | |
| MERCHANDISE ACCEPTANCE CORPORATION, | § | CASE NO. 19-60152 |
| | § | |
| DEBTOR. | § | (Chapter 11) |
| | § | |
| IN RE: | § | |
| | § | |
| LACK'S FURNITURE CENTERS, INC., | § | CASE NO. 10-60151 |
| | § | |
| DEBTOR. | § | (Chapter 11) |
| | § | |
| IN RE: | § | |
| | § | |
| LACK PROPERTIES, INC., | § | CASE NO. 10-60150 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

**DEBTORS' EMERGENCY MOTION FOR JOINT ADMINISTRATION OF CASES**

Lack's Stores, Incorporated and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors") file this *Debtors' Emergency Motion for Joint Administration of Cases* (the "Motion") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, the proposed form of which is attached hereto as **Exhibit "A,"** directing joint administration of the Debtors' respective estates. In support of this Motion, the Debtors respectfully submit as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estates, and, therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On November 16, 2010, (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-referenced cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. As of the Date of this Motion, no official committee of unsecured creditors has been appointed.

6. Contemporaneously with filing this *Motion, the Debtors filed their Debtors' Request for Emergency Consideration of Certain "First Day" Matters*.

## STATEMENT OF FACTS

**A.    The Debtors and Their 70-Year History**

7. Lack's Stores, Incorporated ("Lack's") is a Texas corporation with its corporate headquarters located in Victoria, Texas. It is one of the largest independently-owned retail furniture chains in the United States. Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances and home electronics.

8. The nucleus of the current company was formed on February 28, 1938 by David and Rebecca Lack, when they opened a small auto supply store in Beeville, Texas. Because of the chronic shortage of cars and new auto parts during World War II, the company diversified

into furniture in an attempt to maintain sales volume. Furniture did well, and so became a growing segment of Lack's total business.

9. In 1952, by which time the company had expanded to five retail stores, Lack's made a commitment to become a furniture and appliance chain. It continued to carry auto supplies, tires and other hardware items at all locations, but the merchandising emphasis switched to home furnishings. The original automotive and hardware merchandise was eventually phased out in the 1970's.

10. Today, Lack's remains a family owned business that operates 36 retail home furnishing stores in 26 cities located in Texas.[1] These stores are supported by a 380,000 square foot state-of-the-art distribution center in Schertz, Texas, several cross-docking central delivery facilities, and a service center. According to surveys by Furniture/Today, an industry newspaper, Lack's sales volume place it among the top furniture retailers in the country. In 2007, Lack's was named Retailer of the Year by the National Home Furnishings Association.

11. Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store and warehouse locations that are leased to Lack's.[2] The remaining store locations are leased by Lack's from third party lessors, including locations that are leased from lessors that are affiliated with various members of the Lack's family.

12. Since its inception, Lack's has financed a significant portion of its customers' purchases through the underwriting of "in store" financing. Indeed, over the last several years,

---

[1] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

[2] Merchandise Acceptance Corporation ("Merchandise Acceptance") and Lack's Furniture Centers, Inc. ("Lack's Furniture") are also wholly-owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

Lack's has financed approximately 70% of all customer sales. The book amount of the customer notes receivable portfolio as of the Petition Date is more than $130,000,000. There are currently in excess of 75,000 customer notes receivable, the average balance of each note is approximately $1,700, and the weighted average remaining term of each note is approximately eighteen to twenty-four months.

13. Lack's services the customer notes portfolio with in-house employees. Lack's has historically collected approximately 95% of the balance of the customer notes receivable, even though they are generally considered to be "sub-prime" by many credit institutions.

14. Lack's revenue is derived from the sale of home furnishings and the interest earned from financing customer notes receivable. From February 1, 2010 (the beginning of Lack's fiscal year) through the Petition Date, Lack's has generated revenue of more than $122,000,000 and has operating profit of more than $1,000,000. Lack's currently employs approximately 886 persons.

B. **Secured Credit Facility**

15. Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit Agreement") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "Agent"), and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[3] Lack's relationship with many of the Senior Lenders under the Senior Credit Agreement (or prior versions thereof) dates back to 1999. The Senior Credit Agreement, with a stated maturity date of October 31, 2010,[4] is a revolving credit facility. From 1999

---

[3] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

[4] By agreement, the maturity date was subsequently extended through and including November 12, 2010.

through the maturity date, Lack's had never been in monetary default under the operative credit documents.

16. As of the Petition Date, the aggregate principal amount of the advances currently outstanding under the Senior Credit Agreement is approximately $86,000,000, having been gradually reduced from $105,000,000 since January of 2009. Lack's obligations under the Senior Credit Agreement are guaranteed by Merchandise Acceptance, Lack's Furniture, Lack Properties, and Melvin Lack.[5] The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate. The Senior Lenders do not, however, have dominion over all of the Debtors' bank accounts.

17. In addition to liens held by the Senior Lenders, certain of the properties owned by Lack Properties and leased to Lack's are subject to mortgages held by third party lenders, including stores in Bay City, Abilene, Wichita Falls (now closed), and Longview, as well as warehouse/distribution centers in Schertz and San Antonio.

C. **Trade Creditors**

18. In the ordinary course of business, the Debtors purchase merchandise from an assortment of vendors, including furniture, bedding, home electronics and appliance manufacturers. The Debtors estimate that, as of the Petition Date, the general unsecured claims held by trade vendors against their respective estates are no more than $12,000,000 in the aggregate. The Debtors' three largest vendors[6] account for approximately 60% of the amounts payable to trade creditors.

---

[5] Mr. Lack's obligations under the guarantee are limited. Mr. Lack is not a debtor in these Cases and is represented by separate counsel in the Cases.

[6] Comprised of Sealy Mattress Company, Lane Furniture Industries, and Brownchild Ltd. Inc.

**DEBTORS' EMERGENCY MOTION FOR JOINT ADMINISTRATION OF CASES**   Page 5 of 11
US 611379v.6

**D.     Events Leading to the Chapter 11 Cases**

19.     As a result of the economic slowdown, consumer demand in general – and the demand for home furnishings in particular – decreased sharply starting in the second half of 2008. The decreased demand caused an approximate 20% decrease in Lack's revenues starting at the end of its 2008 fiscal year. Notwithstanding this decrease, Lack's was able to reduce expenses and reach a monthly breakeven position by February 2009. The effort to recover revenues and control expenses has continued. Revenue and profitability have continued to improve during 2010.

20.     At the same time, the national economic slowdown resulted in an unprecedented tightening of credit markets. The Senior Lenders stated that they would not refinance or restructure the obligations under the Senior Credit Agreement on terms which would allow the Debtors to continue their operations. The Debtors have been unable to identify an alternative financing source for their business operations since the overwhelming majority of their customers are rated sub-prime, notwithstanding those customers' and Lack's great historical and current track record of payment and collection, respectively.

21.     Without an alternative funding source, Lack's will be unable to finance the purchase of new inventory or to underwrite additional customer notes receivable. As a consequence, the Debtors determined that it was appropriate to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and equity holders and to conduct an orderly – as opposed to forced – liquidation, utilizing cash collateral to effect the wind-down which is anticipated to pay all creditors in full.

**E.     The Chapter 11 Cases**

22.     The Debtors submit that these Cases will have two macro components or goals. First, the Debtors will request that the Court approve the commencement of "Store Closing

Sales" so that the Debtors (working with Hilco Merchant Resources, LLC ("Hilco")[7]) may sell their remaining inventory in a prompt and efficient manner designed to maximize recoveries and reduce the costs of operations.  Second, the Debtors intend to propose a chapter 11 plan that will provide for the collection of the customer notes receivable portfolio in the ordinary course of business and the marketing and disposition of their real estate interests over time and in such a manner as to maximize their value for the benefit of the estates.

23. The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other miscellaneous assets will satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.

## RELIEF REQUESTED

24. Pursuant to Bankruptcy Rule 1015(b), the Debtors request that this Court enter an order directing joint administration of the Cases on the following terms:

a. One docket shall be maintained for the Debtors' Cases, under the case number assigned to Lack's Store, Incorporated.

b. All pleadings, orders, and other papers filed shall be captioned *In re Lack's Stores, Incorporated, et al.*, Case No. 10-60149 (Jointly Administered).

c. The Office of the United States Trustee (the "U.S. Trustee") should conduct joint informal meetings with the Debtors, as required, and a joint first meeting of creditors, if required.

d. One plan and disclosure statement may be filed for all Cases by any plan proponent; however, substantive consolidation is not being requested at this time.

e. Unless otherwise ordered by the Court, each Debtor will file separate Schedules of Assets and Liabilities, Statements of Financial Affairs, and Lists of Equity Security Holders.

---

[7] Pursuant to the Debtors' agreement with Hilco, Hilco is permitted to joint venture with SB Capital Group, LLC with respect to the "Store Closing" sales.

    f. Proofs of claim filed by creditors of any Debtor shall reflect the caption and case number of the Debtor to which the claim relates and in whose case such claim is to be filed.

    g. A separate claims register shall be maintained for each Debtor.

  25. Bankruptcy Rule 1015(b) provides, in relevant part, "If . . . two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates of such debtor and its affiliates. FED. R. BANKR. P. 1015(b).

  26. All of the Debtors are "affiliates" under Bankruptcy Code § 101(2), with Debtor Lack's Stores, Incorporated being the direct parent of each of the other Debtors. *See* 11 U.S.C. § 101(2). As such, joint administration of the Debtors' Cases is appropriate under Bankruptcy Rule 1015(b).

  27. Further, joint administration of the Debtors' estates will be less costly and less burdensome than the separate administration of the estates. For example, joint administration will permit the use of a single, general docket for the Debtors' Cases and combined notices to creditors and other parties in interest of the Debtors' estates. The Debtors believe it is likely that numerous filings and additional matters, including notices, applications, motions, orders, hearings, and other proceedings will be made, issued, or convened in these Cases. Many of these will affect all of the Debtors. Joint administration will protect parties in interest by ensuring that parties affected by each of the Debtors' Cases will be apprised of the various matters before the Court in those Cases.

  28. Joint administration of the Debtors' estates will also avoid repetitive, duplicative, and potentially confusing filings by permitting counsel for all parties in interest to (a) use a single caption on the numerous documents that will be filed and served in the Debtors' Cases and (b) file documents in only one of the Debtors' Cases rather than in multiple Cases.

29. Moreover, joint supervision of the administrative aspects of the Cases by the U.S. Trustee and the Court will be simplified. As such, joint administration will promote the economical and efficient administration of the Debtors' estates to the benefit of the Debtors, their respective creditors, the U.S. Trustee, and the Court.

30. The rights of the respective creditors of each of the estates will not be prejudiced by the joint administration of the Cases because the relief sought is purely procedural and is not intended to affect substantive rights. Each creditor will be entitled to file a proof of claim against the particular estate against which it allegedly has a claim or right and will retain whatever claims or rights it has against that particular estate. Further, all Schedules of Assets and Liabilities and Statements of Financial Affairs will be captioned and filed separately in each of the Cases, as appropriate.

31. The Debtors propose that the Court establish the following official caption to be used by all parties in all pleadings in the Debtors' jointly administered Cases, except as otherwise specifically provided herein:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| IN RE:<br><br>LACK'S STORES, INCORPORATED, *ET AL*,[8]<br><br>DEBTORS. | §<br>§ CASE NO. 10-60149<br>§<br>§ **Chapter 11**<br>§ **(Jointly Administered)**<br>§ |

32. The Debtors submit that all parties' use of the simplified caption designated above will eliminate cumbersome and confusing procedures and ensure a uniformity of pleading identification.

33. The Debtors also seek this Court's direction that a notation substantially similar to the following be entered on the docket of each of the Cases of the Debtors (other than Lack's) to reflect the joint administration of these Cases:

> An Order has been entered in this case consolidating this case with the case of Lack's Stores, Incorporated *et al.*, Case No. 10-60149 for procedural purposes only and providing for its joint administration in accordance with the terms of such Order. The docket in Case No. 10-60149 should be consulted for all matters affecting this case.

34. No administrative or scheduling orders previously entered in the Cases will require modification if this Motion is granted. Mailing lists in each of the Cases will be consolidated for future noticing requirements.

35. No prior motion for the relief requested herein has been made to this or any other Court.

---

[8] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

## NOTICE

36. Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to: (a) the U.S. Trustee; (b) counsel for The CIT Group/Business Credit, Inc., as Agent for the Senior Lenders, and each Debtor's other secured creditors; (c) each Debtor's 20 largest unsecured creditors; (d) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and the Local Bankruptcy Rules; and (e) those persons or entities that have formally appeared and requested service in these Cases pursuant to Rule 9010(b) of the Bankruptcy Rules.

## PRAYER

The Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit "A," granting the relief requested herein. The Debtors also request such other and further relief to which they may be justly entitled.

Dated: November 16, 2010

Respectfully submitted,

**VINSON & ELKINS LLP**

By: /s/ *Michaela C. Crocker*
Daniel C. Stewart, SBT #19206500
Paul E. Heath, SBT #093555050
Michaela C. Crocker, SBT #24031985
Richard H. London, SBT #24032678
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 214.220.7700
Fax: 214.999.7787
mcrocker@velaw.com
rlondon@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS**