IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 10-60149 |
| LACK'S STORES, INCORPORATED, *ET* § | |
| *AL.*,[1] § | (Chapter 11) |
| § | (Joint Administration Requested) |
| DEBTORS. § | |

**DEBTORS' EMERGENCY MOTION FOR APPROVAL OF THE FORM AND
MANNER OF NOTIFYING CREDITORS OF THE COMMENCEMENT
OF THE CHAPTER 11 CASES AND OTHER INFORMATION**

Lack's Stores, Incorporated and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors"), file this *Emergency Motion Approval of the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information* (the "Motion").  In support of the Motion, the Debtors incorporate the statements contained in the *Declaration of Melvin Lack in Support of First Day Pleadings and Papers* and respectfully state as follows:

### JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion concerns the administration of the estate, and, therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On November 16, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-referenced cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. As of the Date of this Motion, no official committee of unsecured creditors has been appointed.

6. Contemporaneously with the filing of this Motion, the Debtors filed the *Debtors' Emergency Motion for Joint Administration of Cases* and their *Debtors' Request for Emergency Consideration of Certain "First Day" Matters*.

## STATEMENT OF FACTS

**A. The Debtors and Their 70-Year History**

7. Lack's Stores, Incorporated ("Lack's") is a Texas corporation with its corporate headquarters located in Victoria, Texas. It is one of the largest independently-owned retail furniture chains in the United States. Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances and home electronics.

8. The nucleus of the current company was formed on February 28, 1938 by David and Rebecca Lack, when they opened a small auto supply store in Beeville, Texas. Because of the chronic shortage of cars and new auto parts during World War II, the company diversified into furniture in an attempt to maintain sales volume. Furniture did well, and so became a growing segment of Lack's total business.

9. In 1952, by which time the company had expanded to five retail stores, Lack's made a commitment to become a furniture and appliance chain. It continued to carry auto

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

supplies, tires and other hardware items at all locations, but the merchandising emphasis switched to home furnishings. The original automotive and hardware merchandise was eventually phased out in the 1970's.

10. Today, Lack's remains a family owned business that operates 36 retail home furnishing stores in 26 cities located in Texas.[2] These stores are supported by a 380,000 square foot state-of-the-art distribution center in Schertz, Texas, several cross-docking central delivery facilities, and a service center. According to surveys by Furniture/Today, an industry newspaper, Lack's sales volume place it among the top furniture retailers in the country. In 2007, Lack's was named Retailer of the Year by the National Home Furnishings Association.

11. Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store and warehouse locations that are leased to Lack's.[3] The remaining store locations are leased by Lack's from third party lessors, including locations that are leased from lessors that are affiliated with various members of the Lack's family.

12. Since its inception, Lack's has financed a significant portion of its customers' purchases through the underwriting of "in store" financing. Indeed, over the last several years, Lack's has financed approximately 70% of all customer sales. The book amount of the customer notes receivable portfolio as of the Petition Date is more than $130,000,000. There are currently in excess of 75,000 customer notes receivable, the average balance of each note is approximately

---

[2] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

[3] Merchandise Acceptance Corporation ("Merchandise Acceptance") and Lack's Furniture Centers, Inc. ("Lack's Furniture") are also wholly-owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

$1,700, and the weighted average remaining term of each note is approximately eighteen to twenty-four months.

13. Lack's services the customer notes portfolio with in-house employees. Lack's has historically collected approximately 95% of the balance of the customer notes receivable, even though they are generally considered to be "sub-prime" by many credit institutions.

14. Lack's revenue is derived from the sale of home furnishings and the interest earned from financing customer notes receivable. From February 1, 2010 (the beginning of Lack's fiscal year) through the Petition Date, Lack's has generated revenue of more than $122,000,000 and has operating profit of more than $1,000,000. Lack's currently employs approximately 886 persons.

**B.    Secured Credit Facility**

15. Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit Agreement") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "Agent"), and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[4] Lack's relationship with many of the Senior Lenders under the Senior Credit Agreement (or prior versions thereof) dates back to 1999. The Senior Credit Agreement, with a stated maturity date of October 31, 2010,[5] is a revolving credit facility. From 1999 through the maturity date, Lack's had never been in monetary default under the operative credit documents.

---

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

[5] By agreement, the maturity date was subsequently extended through and including November 12, 2010.

16. As of the Petition Date, the aggregate principal amount of the advances currently outstanding under the Senior Credit Agreement is approximately $86,000,000, having been gradually reduced from $105,000,000 since January of 2009. Lack's obligations under the Senior Credit Agreement are guaranteed by Merchandise Acceptance, Lack's Furniture, Lack Properties, and Melvin Lack.[6] The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate. The Senior Lenders do not, however, have dominion over all of the Debtors' bank accounts.

17. In addition to liens held by the Senior Lenders, certain of the properties owned by Lack Properties and leased to Lack's are subject to mortgages held by third party lenders, including stores in Bay City, Abilene, Wichita Falls (now closed), and Longview, as well as warehouse/distribution centers in Schertz and San Antonio.

**C.  Trade Creditors**

18. In the ordinary course of business, the Debtors purchase merchandise from an assortment of vendors, including furniture, bedding, home electronics and appliance manufacturers. The Debtors estimate that, as of the Petition Date, the general unsecured claims held by trade vendors against their respective estates are no more than $12,000,000 in the aggregate. The Debtors' three largest vendors[7] account for approximately 60% of the amounts payable to trade creditors.

---

[6] Mr. Lack's obligations under the guarantee are limited. Mr. Lack is not a debtor in these Cases and is represented by separate counsel in the Cases.

[7] Comprised of Sealy Mattress Company, Lane Furniture Industries, and Brownchild Ltd. Inc.

**DEBTORS' EMERGENCY MOTION FOR APPROVAL OF THE FORM AND
MANNER OF NOTIFYING CREDITORS OF THE COMMENCEMENT
OF THE CHAPTER 11 CASES AND OTHER INFORMATION**                                  **Page 5 of 10**
US 611228v.4

**D.      Events Leading to the Chapter 11 Cases**

19.     As a result of the economic slowdown, consumer demand in general – and the demand for home furnishings in particular – decreased sharply starting in the second half of 2008.  The decreased demand caused an approximate 20% decrease in Lack's revenues starting at the end of its 2008 fiscal year.  Notwithstanding this decrease, Lack's was able to reduce expenses and reach a monthly breakeven position by February 2009.  The effort to recover revenues and control expenses has continued.  Revenue and profitability have continued to improve during 2010.

20.     At the same time, the national economic slowdown resulted in an unprecedented tightening of credit markets.  The Senior Lenders stated that they would not refinance or restructure the obligations under the Senior Credit Agreement on terms which would allow the Debtors to continue their operations.  The Debtors have been unable to identify an alternative financing source for their business operations since the overwhelming majority of their customers are rated sub-prime, notwithstanding those customers' and Lack's great historical and current track record of payment and collection, respectively.

21.     Without an alternative funding source, Lack's will be unable to finance the purchase of new inventory or to underwrite additional customer notes receivable.  As a consequence, the Debtors determined that it was appropriate to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and equity holders and to conduct an orderly – as opposed to forced – liquidation, utilizing cash collateral to effect the wind-down which is anticipated to pay all creditors in full.

E.     **The Chapter 11 Cases**

22.    The Debtors submit that these Cases will have two macro components or goals. <u>First</u>, the Debtors will request that the Court approve the commencement of "Store Closing Sales" so that the Debtors (working with Hilco Merchant Resources, LLC ("<u>Hilco</u>")[8]) may sell their remaining inventory in a prompt and efficient manner designed to maximize recoveries and reduce the costs of operations.  <u>Second</u>, the Debtors intend to propose a chapter 11 plan that will provide for the collection of the customer notes receivable portfolio in the ordinary course of business and the marketing and disposition of their real estate interests over time and in such a manner as to maximize their value for the benefit of the estates.

23.    The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other miscellaneous assets will satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.

## RELIEF REQUESTED

24.    Pursuant to Bankruptcy Code § 105(a), the Debtors request authority to implement certain procedures (the "<u>Procedures</u>") for notifying creditors of the commencement of these Cases, the claims bar date, the meeting of creditors to be held pursuant to Bankruptcy Code § 341 (the "<u>Notice of Commencement</u>"), and other pleadings and notices filed in these Cases.

A.     **Service of the Notice of Commencement and Other Documents**

25.    Bankruptcy Rule 2002(a) provides, in relevant part, "The clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture

trustees at least 21 days' notice by mail of: the meeting of creditors under § 341 or § 1104(b) of the Code." FED. R. BANKR. P. 2002(a). Furthermore, Bankruptcy Rule 2002(f) provides that notice of the order for relief shall be sent by mail to all creditors. *See id.* § 2002(f).

26. Through their Court-approved noticing and claims agent (the "Noticing and Claims Agent"),[9] the Debtors propose to serve the Notice of Commencement, substantially in the form attached hereto as **Exhibit "A"**, to all parties entitled to notice of commencement of these Cases,[10] the setting of the claims bar date, and the setting of the section 341 meeting of creditors.[11] Service of the single notice will not only avoid confusion among creditors but will prevent the estates from incurring the unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous creditors' matrix. Moreover, service by the Noticing and Claims Agent will reduce the substantial burden of service that would otherwise be placed upon the Clerk of the Court.

27. Further, in order to streamline service procedures, the Debtors request that each person or entity requesting notice in the Cases be required to file with the Court a Notice of

---

[8] Pursuant to the Debtors' agreement with Hilco, Hilco is permitted to joint venture with SB Capital Group, LLC with respect to the "Store Closing" sales.

[9] The Debtors will file a separate motion seeking authority to retain the Noticing and Claims Agent.

[10] The Debtors do not currently believe, but are currently still evaluating whether, customers who are participants in certain prepetition customer programs are creditors entitled to notice of the Cases. To the extent any customers may have claims based upon customer programs, the Debtors believe the aggregate of customer claims based on such programs are likely to be *de minimis* in the context of the Cases and administratively burdensome to notice at this time. The Lack's #1 Club, through which customers who are members earn points that can be used toward future purchases, has approximately 75,000 members, over 80% of whom have amassed no more than 50 points to date. The points are not redeemable for cash. Prepetition, the Debtors also offered for purchase customer warranties on furniture through a "Platinum Protection Plan." The Debtors currently intend to honor prepetition-issued Platinum Protection Plans in the ordinary course and so do not believe customers who purchased such warranty protection are creditors. This decision may be revisited as appropriate later in the Cases.

[11] Contemporaneously with this Motion, the Debtors have filed an emergency motion seeking authority to pay all prepetition wages, commissions, and other obligations owing to or on behalf of employees. If approved, the Debtors' employees will not be creditors of the estates and, as such, will not be included on the Creditors' Matrix filed with the Clerk.

Appearance containing the following information: (a) the party's name and address; (b) the name of the client, if applicable; (c) an e-mail address at which the requesting party may be served; (d) an address by which the requesting party may be served by U.S. mail, hand delivery, and overnight delivery; and (e) a facsimile number for the requesting party.  Any individual or entity filing a Notice of Appearance who does not maintain and cannot practicably obtain an e-mail address must include in its Notice of Appearance a certification so stating the same.

28. Moreover, to the extent that an email address is available for a notice party who has not filed a Notice of Appearance (such as one of the Debtors' respective 20 largest unsecured creditors), the Debtors request authority, at their discretion, to serve all pleadings and notices required to be served via email to the parties listed on the Debtors' Master Service List.  Email service to parties will save the estates substantial time and resources otherwise devoted to expediting service of paper copies of pleadings and documents.

## NOTICE

29. Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to: (a) the U.S. Trustee; (b) counsel for The CIT Group/Business Credit, Inc., as Agent for the Senior Lenders, and each Debtor's other secured creditors; (c) each Debtor's 20 largest unsecured creditors; (d) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and the Local Bankruptcy Rules; and (e) those persons or entities that have formally appeared and requested service in these Cases pursuant to Rule 9010(b) of the Bankruptcy Rules.

**PRAYER**

The Debtors request that this Court enter an order establishing the notice procedures proposed herein. The Debtors also request such other and further relief to which they may be justly entitled.

Dated: November 16, 2010

                                  Respectfully submitted,

                                  **VINSON & ELKINS LLP**

                                  By: /s/ *Michaela C. Crocker*
                                        Daniel C. Stewart, SBT #19206500
                                        Paul E. Heath, SBT #093555050
                                        Michaela C. Crocker, SBT #24031985
                                        Richard H. London, SBT #24032678
                                        2001 Ross Avenue, Suite 3700
                                        Dallas, Texas 75201
                                        Tel: 214.220.7700
                                        Fax: 214.999.7787
                                        mcrocker@velaw.com
                                        rlondon@velaw.com

                                  **PROPOSED ATTORNEYS FOR THE DEBTORS**