IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| IN RE: | § |
| | §    **CASE NO. 10-60149** |
| LACK'S STORES, INCORPORATED, *ET AL.*,[1] | §    **(Chapter 11)** |
| | §    **(Joint Administration Requested)** |
| | § |
| DEBTORS. | § |

### DEBTORS' EMERGENCY MOTION FOR EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENTS OF FINANCIAL AFFAIRS

Lack's Stores, Incorporated and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors"), file this *Debtors' Emergency Motion for Extension of Time to File Schedules and Statements of Financial Affairs* (the "Motion"). In support of the Motion, the Debtors incorporate the statements contained in the *Declaration of Melvin Lack in Support of First Day Pleadings and Papers* and would respectfully show the Court as follows:

### JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On November 16, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

5. As of the date hereof, an official committee of unsecured creditors has not been appointed in the Cases.

6. Contemporaneously with the filing of this Motion, the Debtors filed the *Debtors' Emergency Motion for Joint Administration of Cases* and their *Debtors' Request for Emergency Consideration of Certain "First Day" Matters*.

## STATEMENT OF FACTS

**A. The Debtors and Their 70-Year History**

7. Lack's Stores, Incorporated ("Lack's") is a Texas corporation with its corporate headquarters located in Victoria, Texas. It is one of the largest independently-owned retail furniture chains in the United States. Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances and home electronics.

8. The nucleus of the current company was formed on February 28, 1938 by David and Rebecca Lack, when they opened a small auto supply store in Beeville, Texas. Because of the chronic shortage of cars and new auto parts during World War II, the company diversified into furniture in an attempt to maintain sales volume. Furniture did well, and so became a growing segment of Lack's total business.

9. In 1952, by which time the company had expanded to five retail stores, Lack's made a commitment to become a furniture and appliance chain. It continued to carry auto supplies, tires and other hardware items at all locations, but the merchandising emphasis switched to home furnishings. The original automotive and hardware merchandise was eventually phased out in the 1970's.

10. Today, Lack's remains a family owned business that operates 36 retail home furnishing stores in 26 cities located in Texas.[2] These stores are supported by a 380,000 square foot state-of-the-art distribution center in Schertz, Texas, several cross-docking central delivery facilities, and a service center. According to surveys by Furniture/Today, an industry newspaper, Lack's sales volume place it among the top furniture retailers in the country. In 2007, Lack's was named Retailer of the Year by the National Home Furnishings Association.

11. Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store and warehouse locations that are leased to Lack's.[3] The remaining store locations are leased by Lack's from third party lessors, including locations that are leased from lessors that are affiliated with various members of the Lack's family.

12. Since its inception, Lack's has financed a significant portion of its customers' purchases through the underwriting of "in store" financing. Indeed, over the last several years, Lack's has financed approximately 70% of all customer sales. The book amount of the customer notes receivable portfolio as of the Petition Date is more than $130,000,000. There are currently in excess of 75,000 customer notes receivable, the average balance of each note is approximately $1,700, and the weighted average remaining term of each note is approximately eighteen to twenty-four months.

---

[2] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

[3] Merchandise Acceptance Corporation ("Merchandise Acceptance") and Lack's Furniture Centers, Inc. ("Lack's Furniture") are also wholly-owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

13. Lack's services the customer notes portfolio with in-house employees. Lack's has historically collected approximately 95% of the balance of the customer notes receivable, even though they are generally considered to be "sub-prime" by many credit institutions.

14. Lack's revenue is derived from the sale of home furnishings and the interest earned from financing customer notes receivable. From February 1, 2010 (the beginning of Lack's fiscal year) through the Petition Date, Lack's has generated revenue of more than $122,000,000 and has operating profit of more than $1,000,000. Lack's currently employs approximately 886 persons.

B. **Secured Credit Facility**

15. Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit Agreement") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "Agent"), and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[4] Lack's relationship with many of the Senior Lenders under the Senior Credit Agreement (or prior versions thereof) dates back to 1999. The Senior Credit Agreement, with a stated maturity date of October 31, 2010,[5] is a revolving credit facility. From 1999 through the maturity date, Lack's had never been in monetary default under the operative credit documents.

16. As of the Petition Date, the aggregate principal amount of the advances currently outstanding under the Senior Credit Agreement is approximately $86,000,000, having been gradually reduced from $105,000,000 since January of 2009. Lack's obligations under the

---

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

[5] By agreement, the maturity date was subsequently extended through and including November 12, 2010.

**DEBTORS' EMERGENCY MOTION FOR EXTENSION OF TIME**
**TO FILE SCHEDULES AND STATEMENTS OF FINANCIAL AFFAIRS**     **Page 4 of 9**
US 621118v.4

Senior Credit Agreement are guaranteed by Merchandise Acceptance, Lack's Furniture, Lack Properties, and Melvin Lack.[6] The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate. The Senior Lenders do not, however, have dominion over all of the Debtors' bank accounts.

17. In addition to liens held by the Senior Lenders, certain of the properties owned by Lack Properties and leased to Lack's are subject to mortgages held by third party lenders, including stores in Bay City, Abilene, Wichita Falls (now closed), and Longview, as well as warehouse/distribution centers in Schertz and San Antonio.

C. **Trade Creditors**

18. In the ordinary course of business, the Debtors purchase merchandise from an assortment of vendors, including furniture, bedding, home electronics and appliance manufacturers. The Debtors estimate that, as of the Petition Date, the general unsecured claims held by trade vendors against their respective estates are no more than $12,000,000 in the aggregate. The Debtors' three largest vendors[7] account for approximately 60% of the amounts payable to trade creditors.

D. **Events Leading to the Chapter 11 Cases**

19. As a result of the economic slowdown, consumer demand in general – and the demand for home furnishings in particular – decreased sharply starting in the second half of 2008. The decreased demand caused an approximate 20% decrease in Lack's revenues starting at the end of its 2008 fiscal year. Notwithstanding this decrease, Lack's was able to reduce

---

[6] Mr. Lack's obligations under the guarantee are limited. Mr. Lack is not a debtor in these Cases and is represented by separate counsel in the Cases.

[7] Comprised of Sealy Mattress Company, Lane Furniture Industries, and Brownchild Ltd. Inc.

**DEBTORS' EMERGENCY MOTION FOR EXTENSION OF TIME
TO FILE SCHEDULES AND STATEMENTS OF FINANCIAL AFFAIRS** **Page 5 of 9**
US 621118v.4

expenses and reach a monthly breakeven position by February 2009. The effort to recover revenues and control expenses has continued. Revenue and profitability have continued to improve during 2010.

20. At the same time, the national economic slowdown resulted in an unprecedented tightening of credit markets. The Senior Lenders stated that they would not refinance or restructure the obligations under the Senior Credit Agreement on terms which would allow the Debtors to continue their operations. The Debtors have been unable to identify an alternative financing source for their business operations since the overwhelming majority of their customers are rated sub-prime, notwithstanding those customers' and Lack's great historical and current track record of payment and collection, respectively.

21. Without an alternative funding source, Lack's will be unable to finance the purchase of new inventory or to underwrite additional customer notes receivable. As a consequence, the Debtors determined that it was appropriate to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and equity holders and to conduct an orderly – as opposed to forced – liquidation, utilizing cash collateral to effect the wind-down which is anticipated to pay all creditors in full.

E.   The Chapter 11 Cases

22. The Debtors submit that these Cases will have two macro components or goals. First, the Debtors will request that the Court approve the commencement of "Store Closing Sales" so that the Debtors (working with Hilco Merchant Resources, LLC ("Hilco")[8]) may sell their remaining inventory in a prompt and efficient manner designed to maximize recoveries and reduce the costs of operations. Second, the Debtors intend to propose a chapter 11 plan that will

---

[8] Pursuant to the Debtors' agreement with Hilco, Hilco is permitted to joint venture with SB Capital Group, LLC with respect to the "Store Closing" sales.

provide for the collection of the customer notes receivable portfolio in the ordinary course of business and the marketing and disposition of their real estate interests over time and in such a manner as to maximize their value for the benefit of the estates.

23. The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other miscellaneous assets will satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.

## RELIEF REQUESTED

24. Bankruptcy Code § 521 and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") require the filing of schedules of assets and liabilities, current income and expenditures, executory contracts and unexpired leases, and statements of financial affairs (collectively, the "Schedules and Statements") on or within fourteen (14) days after the date of the commencement of a bankruptcy case. The court may extend the time for filing the Schedules and Statements for cause shown. *See* FED. R. BANKR. P. 1007(c). Notice of any requested extension must be given to the U.S. Trustee, any committee appointed pursuant to Bankruptcy Code § 1102, and any other party that the Court directs. *Id*.

25. Due to the size and complexity of the Debtors' businesses, and their pre-petition focus on restructuring their financial affairs, the Debtors have not yet had a sufficient opportunity to complete the drafting of Schedules and Statements and do not anticipate having the Schedules and Statements ready for filing within the fourteen (14) day period prescribed by Bankruptcy Rule 1007(c).

26. However, the Debtors anticipate that it will take no more than forty-five (45) days to complete, review, and file the Schedules and Statements with the Court. Thus the Debtors hereby request that the Court extend the 14-day period under Bankruptcy Rule 1007(c) for an additional thirty-one (31) days.

27. The Debtors maintain that cause exists to grant the relief requested herein given the large amounts of information that must be assembled and compiled and the number of hours that must be devoted to the task of completing the Schedules and Statements.

28. The Debtors believe that no creditor or other party in interest will be prejudiced by the requested extension of time for the filing of the Schedules and Statements. As of the filing of this Motion, the date of the Bankruptcy Code § 341 meeting of creditors has not been scheduled.

29. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

30. This Motion is without prejudice to the Debtors' right to request further extensions of the period within which to file their Schedules and Statements.

## NOTICE

31. Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to: (a) the U.S. Trustee; (b) counsel for The CIT Group/Business Credit, Inc., as Agent for the Senior Lenders, and each Debtor's other secured creditors; (c) each Debtor's 20 largest unsecured creditors; (d) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and the Local Bankruptcy Rules; and (e) those persons or entities that have formally appeared and requested service in these Cases pursuant to Rule 9010(b) of the Bankruptcy Rules.

**PRAYER**

The Debtors respectfully request that this Court enter an Order extending the deadline to file the Schedules and Statements by an additional thirty-one (31) days and granting such other and further relief to which they may be justly entitled.

Dated:  November 16, 2010

                                           Respectfully submitted,

**VINSON & ELKINS LLP**

By: /s/ *Michaela C. Crocker*
      Daniel C. Stewart, SBT #19206500
      Paul E. Heath, SBT #093555050
      Michaela C. Crocker, SBT #24031985
      Richard H. London, SBT #24032678
      2001 Ross Avenue, Suite 3700
      Dallas, Texas 75201
      Tel: 214.220.7700
      Fax: 214.999.7787
      mcrocker@velaw.com
      rlondon@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS**