**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 10-60149** |
| **LACK'S STORES, INCORPORATED, *ET AL.*,**[1] | § | |
| | § | **(Chapter 11)** |
| | § | **(Joint Administration Requested)** |
| **DEBTORS.** | § | |

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING (I) MAINTENANCE OF CERTAIN PREPETITION BANK
ACCOUNTS AND CASH MANAGEMENT SYSTEM AND (II) CONTINUED
USE OF EXISTING CHECKS AND BUSINESS FORMS**

Lack's Stores, Incorporated and its affiliated debtors, as debtors and debtors in possession, (collectively, the "Debtors"), file this *Debtors' Emergency Motion for Interim and Final Orders Approving (I) Maintenance of Certain Prepetition Bank Accounts and Cash Management System and (II) Continued Use of Existing Checks and Business Forms* (the "Motion"). In support of the Motion, the Debtors incorporate the statements contained in the *Declaration of Melvin Lack in Support of First Day Pleadings and Papers* and would respectfully show the Court as follows:

**JURISDICTION AND PROCEDURAL BACKGROUND**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estates, and, therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS                                     Page 1 of 14**

US 611292v.8

3.    On the date of this Motion (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-referenced cases (the "Cases").

4.    Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5.    As of the Date of this Motion, no official committee of unsecured creditors has been appointed.

6.    Contemporaneously with the filing of this Motion, the Debtors filed the *Debtors' Emergency Motion for Joint Administration of Cases* and their *Debtors' Request for Emergency Consideration of Certain "First Day" Matters*.

<b><u>STATEMENT OF FACTS</u></b>

**A.    The Debtors and Their 70-Year History**

7.    Lack's Stores, Incorporated ("Lack's") is a Texas corporation with its corporate headquarters located in Victoria, Texas.  It is one of the largest independently-owned retail furniture chains in the United States.  Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances and home electronics.

8.    The nucleus of the current company was formed on February 28, 1938 by David and Rebecca Lack, when they opened a small auto supply store in Beeville, Texas.  Because of the chronic shortage of cars and new auto parts during World War II, the company diversified into furniture in an attempt to maintain sales volume.  Furniture did well, and so became a growing segment of Lack's total business.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING (I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND (II) CONTINUED USE OF EXISTING CHECKS AND BUSINESS FORMS**                    **Page 2 of 14**

US 611292v.8

9.     In 1952, by which time the company had expanded to five retail stores, Lack's made a commitment to become a furniture and appliance chain.  It continued to carry auto supplies, tires and other hardware items at all locations, but the merchandising emphasis switched to home furnishings.  The original automotive and hardware merchandise was eventually phased out in the 1970's.

10.    Today, Lack's remains a family owned business that operates 36 retail home furnishing stores in 26 cities located in Texas.[2]  These stores are supported by a 380,000 square foot state-of-the-art distribution center in Schertz, Texas, several cross-docking central delivery facilities, and a service center.  According to surveys by Furniture/Today, an industry newspaper, Lack's sales volume place it among the top furniture retailers in the country.  In 2007, Lack's was named Retailer of the Year by the National Home Furnishings Association.

11.    Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store and warehouse locations that are leased to Lack's.[3]  The remaining store locations are leased by Lack's from third party lessors, including locations that are leased from lessors that are affiliated with various members of the Lack's family.

12.    Since its inception, Lack's has financed a significant portion of its customers' purchases through the underwriting of "in store" financing.  Indeed, over the last several years, Lack's has financed approximately 70% of all customer sales.  The book amount of the customer

---

[2] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING (I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND (II) CONTINUED USE OF EXISTING CHECKS AND BUSINESS FORMS**                                    **Page 3 of 14**

US 611292v.8

notes receivable portfolio as of the Petition Date is more than $130,000,000. There are currently in excess of 75,000 customer notes receivable, the average balance of each note is approximately $1,700, and the weighted average remaining term of each note is approximately eighteen to twenty-four months.

13.     Lack's services the customer notes portfolio with in-house employees. Lack's has historically collected approximately 95% of the balance of the customer notes receivable, even though they are generally considered to be "sub-prime" by many credit institutions.

14.     Lack's revenue is derived from the sale of home furnishings and the interest earned from financing customer notes receivable. From February 1, 2010 (the beginning of Lack's fiscal year) through the Petition Date, Lack's has generated revenue of more than $122,000,000 and has operating profit of more than $1,000,000. Lack's currently employs approximately 886 persons.

## B.     Secured Credit Facility

15.     Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit Agreement") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "Agent"), and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[4]  Lack's relationship with many of the Senior Lenders under the Senior Credit Agreement (or prior versions thereof) dates back to 1999. The Senior Credit Agreement,

---

[3] Merchandise Acceptance Corporation ("Merchandise Acceptance") and Lack's Furniture Centers, Inc. ("Lack's Furniture") are also wholly-owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS                                    Page 4 of 14

US 611292v.8

with a stated maturity date of October 31, 2010,[5] is a revolving credit facility. From 1999 through the maturity date, Lack's had never been in monetary default under the operative credit documents.

16.     As of the Petition Date, the aggregate principal amount of the advances currently outstanding under the Senior Credit Agreement is approximately $86,000,000, having been gradually reduced from $105,000,000 since January of 2009. Lack's obligations under the Senior Credit Agreement are guaranteed by Merchandise Acceptance, Lack's Furniture, Lack Properties, and Melvin Lack.[6] The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate. The Senior Lenders do not, however, have dominion over all of the Debtors' bank accounts.

17.     In addition to liens held by the Senior Lenders, certain of the properties owned by Lack Properties and leased to Lack's are subject to mortgages held by third party lenders, including stores in Bay City, Abilene, Wichita Falls (now closed), and Longview, as well as warehouse/distribution centers in Schertz and San Antonio.

## C.     Trade Creditors

18.     In the ordinary course of business, the Debtors purchase merchandise from an assortment of vendors, including furniture, bedding, home electronics and appliance manufacturers. The Debtors estimate that, as of the Petition Date, the general unsecured claims held by trade vendors against their respective estates are no more than $12,000,000 in the

---

[5] By agreement, the maturity date was subsequently extended through and including November 12, 2010.

[6] Mr. Lack's obligations under the guarantee are limited. Mr. Lack is not a debtor in these Cases and is represented by separate counsel in the Cases.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING (I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND (II) CONTINUED USE OF EXISTING CHECKS AND BUSINESS FORMS**                                    **Page 5 of 14**

US 611292v.8

aggregate.  The Debtors' three largest vendors[7] account for approximately 60% of the amounts payable to trade creditors.

**D.      Events Leading to the Chapter 11 Cases**

19.      As a result of the economic slowdown, consumer demand in general – and the demand for home furnishings in particular – decreased sharply starting in the second half of 2008.  The decreased demand caused an approximate 20% decrease in Lack's revenues starting at the end of its 2008 fiscal year.  Notwithstanding this decrease, Lack's was able to reduce expenses and reach a monthly breakeven position by February 2009.  The effort to recover revenues and control expenses has continued.  Revenue and profitability have continued to improve during 2010.

20.      At the same time, the national economic slowdown resulted in an unprecedented tightening of credit markets.  The Senior Lenders stated that they would not refinance or restructure the obligations under the Senior Credit Agreement on terms which would allow the Debtors to continue their operations.  The Debtors have been unable to identify an alternative financing source for their business operations since the overwhelming majority of their customers are rated sub-prime, notwithstanding those customers' and Lack's great historical and current track record of payment and collection, respectively.

21.      Without an alternative funding source, Lack's will be unable to finance the purchase of new inventory or to underwrite additional customer notes receivable.  As a consequence, the Debtors determined that it was appropriate to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and equity holders and to

---

[7] Comprised of Sealy Mattress Company, Lane Furniture Industries, and Brownchild Ltd. Inc.

DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS                                                   Page 6 of 14

US 611292v.8

conduct an orderly – as opposed to forced – liquidation, utilizing cash collateral to effect the wind-down which is anticipated to pay all creditors in full.

**E.      The Chapter 11 Cases**

22.      The Debtors submit that these Cases will have two macro components or goals. First, the Debtors will request that the Court approve the commencement of "Store Closing Sales" so that the Debtors (working with Hilco Merchant Resources, LLC ("Hilco")[8]) may sell their remaining inventory in a prompt and efficient manner designed to maximize recoveries and reduce the costs of operations.  Second, the Debtors intend to propose a chapter 11 plan that will provide for the collection of the customer notes receivable portfolio in the ordinary course of business and the marketing and disposition of their real estate interests over time and in such a manner as to maximize their value for the benefit of the estates.

23.      The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other miscellaneous assets will satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.

**F.      The Debtors' Cash Management System**

24.      Prior to commencing the Cases, the Debtors, primarily through Lack's,[9] managed their cash, receivables, and payables through an integrated cash management system (the "Cash

---

[8] Pursuant to the Debtors' agreement with Hilco, Hilco is permitted to joint venture with SB Capital Group, LLC with respect to the "Store Closing" sales.

[9] All accounts are in Lack's name except for the LPOA (defined herein) and an inactive account at City Bank (xxxx4661), which are in the name of Lack Properties.

DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS                                    **Page 7 of 14**

Management System"). The Cash Management System is designed to efficiently collect, transfer, and disburse funds. A flowchart of the current Cash Management System with redacted bank account numbers is attached hereto as **Exhibit "A"**, and a list of all of the bank accounts with redacted account numbers is attached hereto as **Exhibit "B."** The principal components of the Cash Management System are described below.

25. The Debtors' primary accounts are located with Wells Fargo Bank ("Wells Fargo"), where the Debtors maintain:[10]

- The Lack's Main Operating Account (xxxxxx0107) ("LSMOA"): The LSMOA is the account into which advances from The CIT Group/Business Credit, Inc., as Agent for the Senior Lenders ("CIT"), are deposited. The LSMOA is then used to fund vendor payments and operating expenses and to make payments to the Payroll Account and the Reliance Account.

- The Lack Properties Operating Account (xxxxxx0255) ("LPOA"): The LPOA is funded by payments of rent, utilities, and maintenance from Lack's to Lack Properties. The LPOA account is also used to pay note obligations relating to Lack Properties' mortgaged properties.

- The Payroll Account (xxxxxx0336) ("Payroll Account"): The Payroll Account is a zero balance account used to fund payments to Alliance Payroll Services, Inc., Lack's payroll administrator.

- The Main Depository Account (xxxxxx4492) ("MDA"): The MDA is the account through which the remaining operational accounts flow. Daily electronic deposits from the Store Depository Accounts, the Credit Card Accounts, and the Direct Payment Account (each as defined below) are made into the MDA.

- The Visa, MasterCard, American Express, and Discover Credit Card Accounts (xxxxxx3443, xxxxxx2257, and xxxxxx0301) (the "Credit Card Accounts"): The Credit Card Accounts contain funds collected by various credit card companies and paid to Lack's. Funds from the Credit Card Accounts are transferred into the MDA.

---

[10] Exhibits "A" and "B" contain lists of redacted account numbers relating to the many store depository accounts. The Debtors maintain thirty-nine (39) store depository accounts with Wells Fargo, two (2) of which are inactive. The Debtors also maintain nine (9) store depository accounts with other financial institutions.

DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS                                    Page 8 of 14

US 611292v.8

- The Direct Payment Account (xxxxx8862) ("Direct Payment Account"): The Direct Payment Account collects funds from customer payments made via automated clearing house ("ACH") or via the internet. Funds from the Direct Payment Account are transferred into the MDA.

- The Store Depository Accounts (collectively, the "Store Depository Accounts"): Each store has a separate Store Depository Account to hold funds collected at the store level. The Wells Fargo accounts have standing wire agreements, and funds are wired daily to the MDA. The Non-Wells Fargo accounts are transferred daily to the MDA via ACH transfers initiated by Lack's.[11]

- The Reliance Trust Transfer Account (xxxxxx8917) (the "Reliance Account"): The Reliance Account is a trust account for Lack's 401k and profit-sharing plan. Contributions from employees are paid into this account each pay period.[12] Funds are held in this account for a limited time before being transferred to Reliance (the plan administrator).

- The Maytag Transfer Account (xxxxxx5131) (the "Maytag Account"): The Maytag Account is and has been inactive for the past six to seven years because the Debtors no longer utilize Maytag as a vendor. Lack's intends to close this account.

26.     The Debtors maintain certain state-mandated accounts with financial institutions other than Wells Fargo related to consumer warranties offered by Lack's on its products, including:

- First National Bank in Port Lavaca, Texas (xxx471, xxx861): These accounts hold funds related to product warranties offered by Lack's to its customers pursuant to Texas Occupational Code § 1304.

- Bancfirst (Oklahoma) (xxxxxx3084): This account holds funds related to product warranties previously offered by Lack's to its customers pursuant to the Oklahoma Warranty Insurance Act.

27.     The Debtors also maintain certain other inactive non-Wells Fargo accounts.[13]

---

[11] Certain of the Store Depository Accounts are with institutions that are not approved depositories within this District. The Debtors will work closely with the Office of the U.S. Trustee to consensually address this issue.

[12] The Debtors do not match these employee contributions.

[13] Exhibits "A" and "B" hereto include the redacted account numbers relating to the two (2) inactive accounts maintained at financial institutions other than Wells Fargo.

DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS                                    Page 9 of 14

US 611292v.8

28.     With respect to all of their disbursement accounts, the Debtors maintain accounting controls to accurately trace funds through the Cash Management System to ensure that all transactions are adequately documented and readily ascertainable.  The Debtors reserve the right to seek authorization from the Court, if necessary, to implement changes to the Cash Management System during the pendency of these Cases.

## RELIEF REQUESTED

**A.      Continued Use of Pre-Existing Bank Accounts and Cash Management System in the Ordinary Course of Business**

29.     By this Motion, the Debtors request an order authorizing them to continue the use of their Cash Management System in the ordinary course.

30.     In order to supervise the administration of Chapter 11 cases, the Office of the United States Trustee (the "Trustee") has established certain operating guidelines for debtors in possession.  *See generally, Guidelines for Debtor-in-Possession*, Department of Justice, United States Trustee Program – Region 7.  These guidelines require chapter 11 debtors to, among other things, (a) close all existing bank accounts and open a new debtor-in-possession operating account at an approved depository bank; (b) establish a debtor-in-possession tax account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral, if required by Court order; and (d) obtain new business forms and checks for debtor-in-possession accounts that bear the designation "debtor in possession," the bankruptcy case number, and the type of account.  *Guidelines for Debtor-in-Possession*, Information Regarding Bank Accounts, §§ A-C.

31.     In complex chapter 11 cases, however, courts often waive these requirements, recognizing that such requirements are often impractical.  The Debtors submit that, due to the

DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS                                           Page 10 of 14

US 611292v.8

necessary complexity of its Cash Management System, a similar waiver is appropriate in these Cases.  As such, the Debtors request authority to: (a) maintain and continue to use any or all of their existing accounts in the name and with the account numbers existing immediately prior to the commencement of these Cases; provided, however, that the Debtors reserve the right to close some or all of their existing accounts and open new debtor-in-possession accounts; (b) deposit funds in and withdraw funds from any such accounts by all usual means, including checks, wire transfers, ACH, electronic funds transfers, or other debits; and (c) treat their existing accounts (and any accounts opened postpetition) for all purposes as debtor-in-possession accounts.  The Debtors, however, will request that each depository amend the relevant signature cards to reflect the term "debtor in possession" and the lead case number.

32.     The Debtors maintain a coordinated and integrated accounting, cash management, and treasury system to manage their business operations.  The Debtors believe that the transition to operating in chapter 11 will be more orderly if they are authorized to continue their prepetition practices by using the Cash Management System and the bank accounts associated therewith, including those listed on Exhibits "A" and "B" hereto.  The Debtors' Cash Management System constitutes an ordinary course and essential business practice and provides significant benefits to the Debtors and their estates including, among other things, the ability to control corporate funds, reduce administrative expenses by facilitating the movement of funds, and provide more timely and accurate account balance information.

33.     Having to replace the current Cash Management System would be costly and disruptive to the orderly collection of revenues by the Debtors, resulting in a significant adverse effect on the Debtors' efforts to maximize the value of their estates.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING (I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND (II) CONTINUED USE OF EXISTING CHECKS AND BUSINESS FORMS**                                   **Page 11 of 14**

US 611292v.8

34.     To ensure that all transfers and transactions will be documented in their books and records, the Debtors will continue to maintain records of all transfers within the Cash Management System.  Based upon the foregoing, maintenance of the existing Cash Management System is in the best interests of the Debtors and their estates.

35.     To guard against improper transfers resulting from the postpetition honoring of prepetition checks, the Debtors request that their banks be directed not to honor, subject to certain exceptions approved by this Court, any outstanding checks drawn on the Debtors' bank accounts prior to the Petition Date.

36.     The maintenance of the Cash Management System, as discussed herein will accomplish the dual goals of minimizing the disruption to the Debtors' operations and satisfying the United States Trustee's operating guidelines.  Furthermore, as discussed below, the Debtors will work closely with the Trustee to reach agreement regarding the relief requested herein.

**B.      Waiver of Requirement Regarding Checks and Business Forms**

37.     The Debtors further seek a waiver of the requirement to immediately purchase new checks and business forms that include the term "Debtor in Possession" and the lead case number assigned to these Cases for administrative purposes.

38.     The Debtors have an inventory of check stock and business forms that would go to waste if new checks were to be ordered and used.  Moreover, requiring the Debtors to obtain new checks, which bear the designation "Debtor in Possession," would cause the Debtors to incur undue expense.  To preserve funds and assist in the efficient administration of the estates, the Debtors seek authority to use preexisting business forms and check stock.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING (I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND (II) CONTINUED USE OF EXISTING CHECKS AND BUSINESS FORMS**                                                  **Page 12 of 14**

US 611292v.8

39.     Bankruptcy courts in the Fifth Circuit have routinely granted authority for a debtor's continued use of its existing cash management procedures and policies, particularly where the debtors are a large and complex organization.  *See, e.g., In re Energy Partners, Ltd.,* Case No. 09-32956 (S.D. Tex.); *In re CDX Gas, LLC,* Case No. 08-37922 (Bankr. S.D. Tex.); *In re Integrated Elec. Servs., Inc.,* Case No. 06-30602 (Bankr. N. D. Tex.); *In re Daisytek, Inc.*, Case No. 03-34762 (Bankr. N.D. Tex.).

**C.     Conference with the United States Trustee**

40.     Between the date hereof and the date of the hearing on this Motion, the Debtors intend to work closely with the Trustee to reach agreement related to the relief requested herein.

## NOTICE

41.     Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to: (a) the United States Trustee; (b)  counsel for The CIT Group/Business Credit, Inc., as Agent for the Senior Lenders, and each Debtor's other secured creditors; (c) each Debtor's 20 largest unsecured creditors; (d) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and the Local Bankruptcy Rules; (e) the banks listed in Exhibit "B" to this Motion; and (f) those persons or entities that have formally appeared and requested service in these Cases pursuant to Rule 9010(b) of the Bankruptcy Rules.

## PRAYER

The Debtors respectfully request that the Court enter an Order authorizing the Debtors to (a) maintain their Cash Management System and the bank accounts associated therewith; and (b) utilize their existing checks and forms.  The Debtors further request that the Court grant them such other and further relief to which they may be justly entitled.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS**                                    **Page 13 of 14**

US 611292v.8

Dated:  November 16, 2010

Respectfully submitted,

**VINSON & ELKINS LLP**

By:  /s/  *Michaela C. Crocker*

      Daniel C. Stewart, SBT #19206500
      Paul E. Heath, SBT #093555050
      Michaela C. Crocker, SBT #24031985
      Richard H. London, SBT #24032678
      2001 Ross Avenue, Suite 3700
      Dallas, Texas 75201
      Tel: 214.220.7700
      Fax: 214.999.7787
      mcrocker@velaw.com
      rlondon@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING
(I) MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH
MANAGEMENT SYSTEM AND (II) CONTINUED USE OF
EXISTING CHECKS AND BUSINESS FORMS**                                                **Page 14 of 14**

US 611292v.8