IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-60149 |
| LACK'S STORES, INCORPORATED, *ET AL.*,[1] | § | |
| | § | (Chapter 11) |
| | § | (Jointly Administered) |
| DEBTORS. | § | |

### DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS

Lack's Stores, Incorporated and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors") file this *Emergency Motion for Interim and Final Orders Providing Adequate Assurance of Utility Payments* (the "Motion"). In support of the Motion, the Debtors incorporate the statements contained in the *Declaration of Melvin Lack in Support of First Day Pleadings and Papers* and would respectfully show the Court as follows:

### JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estates; and therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On the date of this Motion (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-referenced cases (the "Cases").

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**      **Page 1 of 11**

US 611374v.7

4.      Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5.      As of the Date of this Motion, no official committee of unsecured creditors has been appointed.

6.      Contemporaneously with the filing of this Motion, the Debtors filed the *Debtors' Emergency Motion for Joint Administration of Cases* and their *Debtors' Request for Emergency Consideration of Certain "First Day" Matters*.

<u>**STATEMENT OF FACTS**</u>

A.      **The Debtors and Their 70-Year History**

7.      Lack's Stores, Incorporated ("<u>Lack's</u>") is a Texas corporation with its corporate headquarters located in Victoria, Texas.  It is one of the largest independently-owned retail furniture chains in the United States.  Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances and home electronics.

8.      The nucleus of the current company was formed on February 28, 1938 by David and Rebecca Lack, when they opened a small auto supply store in Beeville, Texas.  Because of the chronic shortage of cars and new auto parts during World War II, the company diversified into furniture in an attempt to maintain sales volume.  Furniture did well, and so became a growing segment of Lack's total business.

9.      In 1952, by which time the company had expanded to five retail stores, Lack's made a commitment to become a furniture and appliance chain.  It continued to carry auto supplies, tires and other hardware items at all locations, but the merchandising emphasis

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**                    **Page 2 of 11**

US 611374v.7

switched to home furnishings.  The original automotive and hardware merchandise was eventually phased out in the 1970's.

10.     Today, Lack's remains a family owned business that operates 36 retail home furnishing stores in 26 cities located in Texas.[2]  These stores are supported by a 380,000 square foot state-of-the-art distribution center in Schertz, Texas, several cross-docking central delivery facilities, and a service center.  According to surveys by Furniture/Today, an industry newspaper, Lack's sales volume place it among the top furniture retailers in the country.  In 2007, Lack's was named Retailer of the Year by the National Home Furnishings Association.

11.     Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store and warehouse locations that are leased to Lack's.[3]  The remaining store locations are leased by Lack's from third party lessors, including locations that are leased from lessors that are affiliated with various members of the Lack's family.

12.     Since its inception, Lack's has financed a significant portion of its customers' purchases through the underwriting of "in store" financing.  Indeed, over the last several years, Lack's has financed approximately 70% of all customer sales.  The book amount of the customer notes receivable portfolio as of the Petition Date is more than $130,000,000.  There are currently in excess of 75,000 customer notes receivable, the average balance of each note is approximately $1,700, and the weighted average remaining term of each note is approximately eighteen to twenty-four months.

---

[2] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS**
**PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**                                    **Page 3 of 11**

US 611374v.7

13.     Lack's services the customer notes portfolio with in-house employees. Lack's has historically collected approximately 95% of the balance of the customer notes receivable, even though they are generally considered to be "sub-prime" by many credit institutions.

14.     Lack's revenue is derived from the sale of home furnishings and the interest earned from financing customer notes receivable. From February 1, 2010 (the beginning of Lack's fiscal year) through the Petition Date, Lack's has generated revenue of more than $122,000,000 and has operating profit of more than $1,000,000. Lack's currently employs approximately 886 persons.

**B.     Secured Credit Facility**

15.     Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit Agreement") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "Agent"), and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[4]  Lack's relationship with many of the Senior Lenders under the Senior Credit Agreement (or prior versions thereof) dates back to 1999. The Senior Credit Agreement, with a stated maturity date of October 31, 2010,[5] is a revolving credit facility. From 1999 through the maturity date, Lack's had never been in monetary default under the operative credit documents.

---

[3] Merchandise Acceptance Corporation ("Merchandise Acceptance") and Lack's Furniture Centers, Inc. ("Lack's Furniture") are also wholly-owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

[5] By agreement, the maturity date was subsequently extended through and including November 12, 2010.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**                                          **Page 4 of 11**

US 611374v.7

16.     As of the Petition Date, the aggregate principal amount of the advances currently outstanding under the Senior Credit Agreement is approximately $86,000,000, having been gradually reduced from $105,000,000 since January of 2009.  Lack's obligations under the Senior Credit Agreement are guaranteed by Merchandise Acceptance, Lack's Furniture, Lack Properties, and Melvin Lack.[6]  The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate.  The Senior Lenders do not, however, have dominion over all of the Debtors' bank accounts.

17.     In addition to liens held by the Senior Lenders, certain of the properties owned by Lack Properties and leased to Lack's are subject to mortgages held by third party lenders, including stores in Bay City, Abilene, Wichita Falls (now closed), and Longview, as well as warehouse/distribution centers in Schertz and San Antonio.

## C.     Trade Creditors

18.     In the ordinary course of business, the Debtors purchase merchandise from an assortment of vendors, including furniture, bedding, home electronics and appliance manufacturers.  The Debtors estimate that, as of the Petition Date, the general unsecured claims held by trade vendors against their respective estates are no more than $12,000,000 in the aggregate.  The Debtors' three largest vendors[7] account for approximately 60% of the amounts payable to trade creditors.

---

[6] Mr. Lack's obligations under the guarantee are limited.  Mr. Lack is not a debtor in these Cases and is represented by separate counsel in the Cases.

[7] Comprised of Sealy Mattress Company, Lane Furniture Industries, and Brownchild Ltd. Inc.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**                    **Page 5 of 11**

US 611374v.7

**D.      Events Leading to the Chapter 11 Cases**

19.      As a result of the economic slowdown, consumer demand in general – and the demand for home furnishings in particular – decreased sharply starting in the second half of 2008.  The decreased demand caused an approximate 20% decrease in Lack's revenues starting at the end of its 2008 fiscal year.  Notwithstanding this decrease, Lack's was able to reduce expenses and reach a monthly breakeven position by February 2009.  The effort to recover revenues and control expenses has continued.  Revenue and profitability have continued to improve during 2010.

20.      At the same time, the national economic slowdown resulted in an unprecedented tightening of credit markets.  The Senior Lenders stated that they would not refinance or restructure the obligations under the Senior Credit Agreement on terms which would allow the Debtors to continue their operations.  The Debtors have been unable to identify an alternative financing source for their business operations since the overwhelming majority of their customers are rated sub-prime, notwithstanding those customers' and Lack's great historical and current track record of payment and collection, respectively.

21.      Without an alternative funding source, Lack's will be unable to finance the purchase of new inventory or to underwrite additional customer notes receivable.  As a consequence, the Debtors determined that it was appropriate to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and equity holders and to conduct an orderly – as opposed to forced – liquidation, utilizing cash collateral to effect the wind-down which is anticipated to pay all creditors in full.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS**
**PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**                                      **Page 6 of 11**

US 611374v.7

**E.      The Chapter 11 Cases**

22.      The Debtors submit that these Cases will have two macro components or goals. First, the Debtors will request that the Court approve the commencement of "Store Closing Sales" so that the Debtors (working with Hilco Merchant Resources, LLC ("Hilco")[8]) may sell their remaining inventory in a prompt and efficient manner designed to maximize recoveries and reduce the costs of operations.  Second, the Debtors intend to propose a chapter 11 plan that will provide for the collection of the customer notes receivable portfolio in the ordinary course of business and the marketing and disposition of their real estate interests over time and in such a manner as to maximize their value for the benefit of the estates.

23.      The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other miscellaneous assets will satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.

### RELIEF REQUESTED[9]

24.      By this Motion, the Debtors seek entry of an interim order (the "Interim Order"): (a) prohibiting utility companies (collectively the "Utilities" or individually a "Utility") from altering, refusing, or discontinuing services to the Debtors on account of prepetition invoices, pending entry of a final order granting the relief requested herein or the Interim Order becoming a final order (the "Final Order"); (b) authorizing and approving the amount and method by which the Debtors may furnish certain utilities with adequate assurance of payment for postpetition

---

[8] Pursuant to the Debtors' agreement with Hilco, Hilco is permitted to joint venture with SB Capital Group, LLC with respect to the "Store Closing" sales.

[9] Nothing herein shall be deemed an assumption of any executory contract that could bind the Debtors in the future.

utility services and directing the utilities to continue providing such services pending entry of the Final Order; and (c) scheduling a final hearing on this Motion within 25 days of the Petition Date (the "<u>Final Hearing</u>").  The Debtors additionally seek entry of any other orders necessary under the procedures in this Motion to grant the relief requested herein.

### A.    Utility Services

25.    Multiple Utilities provide the Debtors with traditional utility services such as telephone and communications services, electricity, water, sewer, gas, and other similar services that are necessary for the continued operation of the Debtors' day-to-day business operations.  A list of all identified Utilities is attached hereto as **<u>Exhibit "A"</u>** (the "<u>Utility Service List</u>").[10]  The Debtors have made a good-faith effort to identify all Utilities and list them on the Utility Service List.

26.    Uninterrupted utility service, including telephone and internet-based communication between and among the stores, distribution centers, and corporate headquarters, is critical to the Debtors' operations.  Loss of utility service at any store would require cessation of that store's operations, and loss of utility service at a distribution center would cripple the Debtors' supply chain. Such a cessation in service would substantially disrupt operations and result in loss of revenues, which could irreparably harm and jeopardize the Debtors' objective of an orderly liquidation of the inventory in their stores.

---

[10] Inclusion of any entity on, or the exclusion of any entity from, the Utility Service List is not an admission by the Debtors that such entity is or is not a "utility" within the meaning of Bankruptcy Code § 366, and the Debtors reserve their right to contend that any entity listed on <u>Exhibit "A"</u> is not a utility.  The Debtors request that this Motion apply to all Utilities regardless of whether they are currently identified on the Utility Service List.  For any Utility identified after the Petition Date, the Debtors request that the prohibitions and procedures set forth herein shall be extended to such Utility absent an order of this Court to the contrary.

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**                    **Page 8 of 11**

US 611374v.7

**B.     The Adequate Assurance Deposit**

27.     Section 366 of the Bankruptcy Code provides that a utility may alter, refuse, or discontinue a chapter 11 debtor's utility service if the utility does not receive from the debtor adequate "assurance of payment" within 30 days from the Petition Date.  11 U.S.C. § 366(b). Section 366(c)(l)(A) defines the phrase "adequate assurance of payment" to mean, among other things, a cash deposit.  *Id*. § 366(c)(1)(A).  As adequate protection, the Debtors propose to (a) pay all outstanding amounts owing on account of prepetition services rendered (approximately $120,000) and (b) provide a deposit to each Utility in an amount equal to one half of the average monthly bill, calculated based on the historical monthly average over the past several months (each, an "Adequate Assurance Deposit"); provided, however, that (a) such requesting Utility does not already hold a deposit equal to or greater than the Adequate Assurance Deposit (which existing deposit shall be deemed to be the Adequate Assurance Deposit for purposes of this Motion); and (b) such requesting Utility is not currently paid in advance for its services.

28.     Any Utility that is not satisfied with the Debtors' proposed Adequate Assurance Deposit must (a) file a motion with the Court requesting additional adequate assurance and setting forth the basis for such request and (b) set such motion for hearing no earlier than twenty-five (25) days after the filing of the motion.  The Debtors, in their sole discretion, may resolve a motion filed by a Utility by agreement and may provide such Utility with additional adequate assurance of payment in addition to the Adequate Assurance Deposit without order of the Court.

## REQUEST FOR INTERIM AND FINAL RELIEF

29.     Because uninterrupted utility service is critical to the Debtors' ability to operate and maintain the value of their businesses, the Debtors request that this Court immediately grant

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS**
**PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**                                              **Page 9 of 11**

US 611374v.7

the relief requested herein on an interim basis for every Utility and on a final basis for every Utility that does not file a Procedures Objection as defined herein.

30.     The Debtors request assurance by the Court that nothing in the requested relief shall be construed (a) to limit, or in any way affect, the Debtors' ability to dispute any request for payment related to a Utility's services, (b) as a waiver by the Debtors of their rights to contest any invoice or other claim of a Utility under applicable law, or (c) as an admission or concession that any entity is a utility within the meaning of Bankruptcy Code § 366, and all the Debtors' rights and defenses are reserved with respect thereto.

## NOTICE

31.     Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to: (a) the U.S. Trustee; (b)  counsel for The CIT Group/Business Credit, Inc., as Agent for the Senior Lenders, and each Debtor's other secured creditors; (c) each Debtor's 20 largest unsecured creditors; (d) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and the Local Bankruptcy Rules; (e) the Utilities set forth on Exhibit "A" hereto; and (f) those persons or entities that have formally appeared and requested service in these Cases pursuant to Rule 9010(b) of the Bankruptcy Rules.

## PRAYER

The Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit "B"**, granting the relief requested herein and such other and further relief to which they may be justly entitled.

Dated:  November 16, 2010

Respectfully submitted,

**VINSON & ELKINS LLP**

By:   /s/  *Michaela C. Crocker*
      Daniel C. Stewart, SBT #19206500
      Paul E. Heath, SBT #093555050
      Michaela C. Crocker, SBT #24031985
      Richard H. London, SBT #24032678
      2001 Ross Avenue, Suite 3700
      Dallas, Texas 75201
      Tel: 214.220.7700
      Fax: 214.999.7787
      mcrocker@velaw.com
      rlondon@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
PROVIDING ADEQUATE ASSURANCE OF UTILITY PAYMENTS**      **Page 11 of 11**

US 611374v.7