# Hilco Merchant Resources

November 15, 2010

Melvin Lack
Chief Executive Officer
Lack's Stores, Incorporated
200 S Ben Jordan St
Victoria, TX 77901-8699

Re:   **Letter Agreement Governing Store Closing Sales**

Dear Melvin:

Further to our recent discussions, this letter will serve as a letter agreement ("Agreement") between Hilco Merchant Resources, LLC, (the "Consultant") and Lack's Stores, Incorporated d/b/a Lacks Home Furnishings ("Merchant"), which is contemplating filing a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court having jurisdiction over its case (the "Bankruptcy Court"), under which Consultant will act as the exclusive consultant for the purpose of providing the services hereinafter set forth ("Services") in connection with the disposition of the saleable inventory sold in the ordinary course of Merchant's business located at Merchant's retail locations listed on Exhibit A attached hereto (collectively, the "Stores") and the Merchant's distribution center as of the Commencement Date (defined below).

Consultant will assist Merchant in disposing of the Merchandise (hereinafter defined) through the conduct of a "store closing sale", "going out of business" or other mutually agreed upon sale handle at the Stores (the "Sale"). The Sale will commence on or about November 19, 2010 (the "Commencement Date") and will terminate at each Store no later than February 13, 2011 (the "Conclusion Date"). Consultant will conclude the sale of all Merchandise and FF&E and will vacate the Stores and distribution center on or before the Conclusion Date, on 7 days' notice. The period from the Sale Commencement Date to the Conclusion Date shall be referred to as the "Term."

    A.   Project Management.

        (i)   Consultant's Undertakings

During the Term, Consultant shall (a) provide qualified supervisors, (the "Supervisors") engaged by Consultant as independent contractors to manage the inventory reduction at the Stores; (b) recommend and implement appropriate store signage and mixed media advertising for the Stores; (c) recommend and implement appropriate pricing of Merchandise, staffing levels at the Stores, and, if necessary and at the request of Merchant, bonus and incentive programs for Merchant's employees; (d) oversee display of Merchandise at the Stores; (e) coordinate accounting functions at the Stores, including evaluation of sales of Merchandise by category, sales reporting, and monitoring of expenses using Merchant's existing infrastructure; (f) maintain the confidentiality of all proprietary or non-public information provided by Merchant to Consultant; (g) provide such other related services deemed necessary or appropriate by Merchant; (h) manage and control loss prevention at the Stores; (i) provide support in obtaining appropriate authorization and permits to conduct the Sale from state

November 15, 2010
Page 2

and local authorities, if necessary; and (j) recommend appropriate levels of Additional Goods (hereinafter defined) to be included in the Sale.

It is expressly understood and agreed between Consultant and Merchant that all Supervisors are and shall be independent contractors of Consultant and that Merchant shall have no liability to the Supervisors or to Consultant for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination, taxes, costs and expenses or any other liability arising from Consultant's hiring or retention of the Supervisors.

(ii)   Merchant's Undertakings

During the Term, Merchant shall (a) be the employer of the Store employees, other than the Supervisors, and Consultant shall have no liability to the Store employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment of the Store employees, including obligations under any collective bargaining agreement; (b) pay all taxes, costs, expenses, accounts payable and other liabilities relating to the Stores, the Store employees and other consultants and representatives of Merchant, other than Consultant and Supervisors; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) supervise Merchant's employees in implementing the recommendations of the Consultant and the Supervisors with respect to those matters for which Consultant is responsible and which Merchant has approved or authorized hereunder; (f) execute all agreements, other than agreements with Supervisors or other third parties hired or retained by Consultant, determined by the Merchant and Consultant to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the maintenance of all point-of-sale equipment required for the Stores; and shall have sole and exclusive authority to ensure compliance with Merchant's policies and procedures and job performance requirements, and the right to issue any appropriate disciplinary action that might flow from Merchant's employee's non-compliance with such policies and procedures; and (h) purchase the Additional Goods.

Merchant will provide throughout the Sale Term central administrative services necessary for the Sale such as POS administrations, sales audit, cash reconciliation, payroll processing, and in-house advertising services.

B.   The Sale.

All sales of Merchandise and Additional Goods shall be made on behalf of Merchant. Consultant does not have, nor shall it have, any right, title or interest in the Merchandise or Additional Goods. All sales of Merchandise shall be by cash or credit card and, at Merchant's discretion, by check and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

C.   Expenses; Sale Reconciliation.

(i)   Merchant will be responsible for all expenses of the Sale, including, but not limited to, all Store level operating expenses and Consultant's out-of-pocket costs for "Advertising" and "Supervision". A budget of Agent's "Advertising" and "Supervision" expenses are set forth on Exhibit B attached hereto and a budget of overall Sale expenses is attached hereto as Exhibit C (the

"Expense Budget"), which shall be referred to as the "Sale Expenses."[1] Merchant shall advance Consultant the first week of Consultant's expected out-of-pocket expenses for "Advertising" and "Supervision" upon entry of the Order (as defined below) or the first three (3) weeks of such expenses should the Sale commence before the filing of the bankruptcy case and entry of the Order.

        (ii)    On Wednesday of each week, commencing on the first Wednesday following the Commencement Date, Consultant and Merchant shall reconcile the results of the Sale for the prior week, including, without limitation, gross proceeds of Merchandise and Additional Goods, delivery revenue, sales of FF&E, Consultant's out-of-pocket costs for "Advertising" and "Supervision", any Consulting Fee, and any FF&E Fee earned and payable hereunder, and Merchant shall, to the extent not already advanced, pay to Consultant on a weekly basis, in connection with such weekly settlement, mutually agreed (i) "Advertising" and "Supervision" expenses incurred or paid by Consultant for such prior week, (ii) anticipated "Advertising" and "Supervision" for the next succeeding week of the Sale, and (iii) Consulting Fee and FF&E Fee.

    D.    <u>Additional Goods</u>.

In addition, to maximize the return on the Merchandise, Consultant may seek to include certain inventory (the "Additional Goods") to compliment the Merchandise in the Sale so long as Merchant approves the acquisition of such Additional Goods. The expense incident to acquiring and selling the Additional Goods shall be an expense of the Merchant. To the extent that Merchant requests that Consultant bear the expense for the Additional Goods, Merchant and Consultant shall mutually agree to a revised fee structure to address the use of Consultant's credit to purchase such goods and a mechanism to secure Consultant's interest in such goods.

    E.    <u>Indemnification</u>.

        (i)    Merchant's Indemnification

Merchant shall indemnify and hold Consultant and its consultants, members, officers, directors, employees, principals and Supervisors (collectively, "Consultant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or its consultants, members, employees, representatives and principals (other than Consultant Indemnified Parties); (b) the breach of any provision of this Agreement by Merchant; and (c) any liability or other claims, including without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Consultant Indemnified Parties) against a Consultant Indemnified Party, except claims arising from Consultant's negligence, intentional acts or unlawful behavior.

---

[1] For clarity, Sale Expenses are all reasonable out of pocket documented and customary expenses incurred in connection with the conduct of the Sale and the operation of the Stores during the Sale Term, consistent with and subject to the categories and aggregate amount set forth in the Expense Budget; <u>provided</u> that (a) "Occupancy" expenses (as itemized in the Expense Budget) shall be limited on a per diem per Store basis during the Sale Term at the Store in accordance with Exhibit <u>D</u>; (b) the amount of benefits (including, without limitation, FICA, unemployment taxes, workers' compensation and health insurance benefits) payable to employees in the Stores used during the Sale shall be capped for purposes of calculating Sale Expenses hereunder in an amount not to exceed 19.2% of base payroll for each employee; and (c) all costs of or related to the distribution center (Store 892) and distribution center employees shall be on a per diem basis.

November 15, 2010
Page 4

    (ii)  Consultant's Indemnification

    Consultant shall indemnify and hold Merchant and its officers, directors, principals, members, consultants and employees (collectively, "Merchant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Consultant or its consultants, members, employees, representatives, principals and Supervisors; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Consultant; and (c) any liability or other claims made by Consultant's consultants, members, employees, representatives, principals, Supervisors or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Consultant's conduct of the Sale, except claims arising from Merchant's negligence, intentional acts or unlawful behavior.

  F.  <u>Insurance</u>.

    (i)  Merchant's Insurance Obligations

    Merchant shall maintain throughout the Term, liability insurance policies (including, but not limited to, products liability, workers compensation insurance, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Consultant to be an additional insured with respect to all such policies; provided, however, that Merchant may self-insure against the risks contemplated hereunder. If applicable and at Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is an additional insured thereunder.

    (ii)  Consultant's Insurance Obligations

    Consultant shall maintain throughout the Term, liability insurance policies (including, but not limited to, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least One Million dollars ($1,000,000) covering injuries to persons and property in or in connection with Consultant's provision of services at the Stores, and shall cause Merchant to be an additional insured with respect to all such policies. At Merchant's request, Consultant shall provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder and that Merchant is an additional insured thereunder.

  G.  <u>Advertising</u>.

    Consultant shall advertise the Sale. Consultant will present any signage and advertising to Merchant for Merchant's approval, which approval will be deemed given unless Merchant otherwise notifies Consultant within twenty-four hours of presentment.

November 15, 2010
Page 5

      H.    <u>Fee</u>

Consultant shall earn a fee equal to $4,500 per Store ("Base Fee") plus 20% of Net Proceeds of the Sale of the Merchandise and Additional Goods at the Stores in excess of 64.4% of Cost Value for such Merchandise (the "Incentive Fee"). For clarity, the Incentive Fee is calculated by measuring the Net Proceeds against the Merchandise only. The Base Fee shall be paid weekly in 10 installments in connection with the weekly reconciliation and the Incentive Fee shall be paid in connection with the final reconciliation. The Base Fee and Incentive Fee shall not be subject to any liens, claims or encumbrances. For the purposes of this Agreement, the following definitions should apply:

"Clearance Center Merchandise" shall mean any item of Merchandise located in the Victoria clearance center.

"Cost Value" shall mean the cost of the Merchandise reflected on Merchant's books and records and provided to Agent in due diligence (less 3%), except for Defective Merchandise and Clearance Center Merchandise for which Cost Value will mean the amounts to which the parties mutually agree. Cost Value for the Additional Goods shall mean the actual vendor cost paid by Merchant for Additional Goods; plus any associated shipping or other third-party expenses to have such Additional Goods delivered to/from the Stores, but exclusive of any "lift" or other Merchant handling fees or expenses. The aggregate Cost Value shall be determined pursuant to a calculation of cash register receipts.

"Defective Merchandise" means an item of merchandise that may be non-first quality inventory, such as parts, inventory that may or may not be unsaleable in its current physical condition (specifically including, among other things, incomplete sets of inventory intended to be sold as a set, and mismatched sets), used or previously owned, damaged, shopworn, dented, worn, scratched, faded, torn, or soiled inventory.

"Merchandise" shall mean saleable finished goods located at the Stores and distribution center on the Sale Commencement Date, excluding Repair and Undelivered Sale Merchandise, items that are unsaleable for their intended purpose and those items of Replenishment Merchandise received after four weeks after the Sale Commencement Date, unless Agent agrees otherwise.

"Net Proceeds" shall mean the aggregate of: (a) the total amount (in U.S. dollars) of all sales of Merchandise and Additional Goods that have been delivered to, or picked up by, the customer, exclusive of (i) all sales taxes attributable to sales of Merchandise and Additional Goods and (ii) delivery revenue and (b) any proceeds of Merchant's insurance for loss or damage to Merchandise or Additional Goods or loss of cash arising from events occurring during the Sale Term less the actual Sale Expenses.

"Repair, and Undelivered Sale Merchandise" means all items of Merchandise held at the Stores for repair, or Sales for goods undelivered, in each case pursuant to binding agreements, invoices or other legal documentation, where (a) the documentation is clear as to the name, address, telephone number, date of last payment and balance due from the customer, and (b) the goods subject to layaway, repair or special order are properly identified and in a condition as described in the documentation.

"Replenishment Merchandise" means Merchandise which has been previously ordered in the ordinary course and would have been distributed to the Stores in the ordinary course of Merchant's business, but has not been received at the Stores as of the Sale Commencement Date. Such merchandise may be shipped to the Stores and included in the Sale, at Merchant's discretion, provided such merchandise is received at the Stores within four (4) weeks of the Sale Commencement Date, unless Agent agrees otherwise.

I. Representations, Warranties and Agreements.

(i) Merchant warrants, represents, covenants and agrees that through the Sale Commencement Date, (a) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (b) all normal course hard markdowns on the Merchandise have been, and will be, taken consistent with customary practices, including Merchandise transferred into the Sale, and (c) the Stores will be operated in the ordinary course of business consistent with past practices in all respects, other than expressly agreed to by Merchant and Consultant.

(ii) Consultant warrants, represents, covenants and agrees that (a) Consultant is a company duly organized, validly existing and in good standing under the laws of the state and/or country of its principal office, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Consultant and this Agreement constitutes a valid and binding obligation of Consultant enforceable against Consultant in accordance with its terms and conditions, and the consent of no other entity or person is required for Consultant to fully perform all of its obligations herein or the Services hereunder, and (c) Consultant shall comply with and act in accordance with any and all applicable laws and other legal obligations of all governmental authorities.

J. Furniture, Fixtures and Equipment.

Consultant will liquidate the furniture, fixtures and equipment in the Stores (the "FF&E"). In consideration for providing this service, Consultant shall be entitled to a commission equal to fifteen percent (15%) of the proceeds (net of applicable sales taxes) from the sale of the FF&E. Merchant shall be responsible for all expenses incurred in connection with the sale of FF&E, which expenses shall be incurred pursuant to the budget mutually agreed to by Merchant and Consultant.

K. Notices.

All notices, certificates, approvals, and payments provided for herein shall be sent as follows: (a) To Merchant: Lack's Stores, Incorporated, 200 S Ben Jordon St., Victoria, TX 77901, Attn: Melvin Lack; (b) To Consultant: Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Attn: Joseph Malfitano; or (c) such other address as may be designated in writing by Merchant or Consultant.

L. Independent Consultant.

Consultant's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect. No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement. Consultant is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties unless authorized in writing to do so by Merchant. Consultant shall have no control over the hours that Merchant or its employees or assistants work, or the means or manner in which they perform their work, Consultant is authorized only to make recommendations in this regard, which Merchant shall use reasonable efforts to effectuate.

M. Governing Law, Venue, Jurisdiction and Jury Waiver.

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of Illinois (without reference to the conflicts of laws provisions therein and the federal laws of the United States). Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from this agreement or the Agent's services hereunder, shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

N. Non-Assignment.

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either party hereto without the prior written consent of the other party, provided that, Consultant shall be permitted to joint venture with SB Capital Group, LLC. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns, including, but not limited to, any chapter 11 or chapter 7 trustee.

O. Severability.

If any term or provision of this Agreement, as applied to either party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable; provided, however, that if any term or provision of this Agreement pertaining to the Services shall be declared invalid, illegal, unenforceable, inoperative or otherwise ineffective, Merchant shall have the right to terminate this Agreement as provided herein. If the surviving portions of the Agreement fail to retain the essential understanding of the parties, the Agreement may be terminated by mutual consent of the parties.

P. Waiver, Modification and Amendment.

No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such party. The failure by either party to enforce, or the delay by either party in enforcing, any of said party's rights under this Agreement shall not be construed as a continuing waiver of such rights, and said party may, within such time as is provided

by the laws established by any government with applicable jurisdiction, commence appropriate suits, actions or proceedings to enforce any or all of such rights. A waiver by either party of a default in one or more instances shall not be construed as a waiver in other instances.

   Q.  <u>Entire Agreement.</u>

  This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Agreement except as specifically set forth in this Agreement. All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

   R.  <u>Court Approval.</u>

  This Agreement is subject to the approval of the Bankruptcy Court. Consultant may start the Sale before Merchant files a petition for relief under the Bankruptcy Code. When Merchant commences a chapter 11 case, it shall promptly seek approval and assumption of this Agreement under section 365 of the Bankruptcy Code and request entry of an order (the "<u>Order</u>"), in form and substance reasonably satisfactory to Consultant, which order shall provide, (a) approval of the transaction contemplated hereby, (b) authorizing the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, licensing requirements, that would otherwise govern the Sale, (c) authorizing the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents, and (d) authorizing and directing Merchant to pay Consultant's fees and expenses payable hereunder on a weekly basis without further order of the Bankruptcy Court . If the Bankruptcy Court does not approve the assumption of this Agreement, Consultant agrees that it shall not have any claims and/or damages under this Agreement, provided that, Consultant shall be permitted to reimburse itself for expenses incurred per the Budget with those amounts advanced by Merchant.

November 15, 2010
Page 9

\*            \*            \*

If this Agreement is acceptable to you, kindly execute a copy thereof in the space provided, and return it to the undersigned. Thank you for this opportunity -- we look forward to working with you.

Very truly yours,

**HILCO MERCHANT RESOURCES, LLC**

By: *[signature]*
Its:

**AGREED AND ACCEPTED:**

**LACK'S STORES, INCORPORATED**
**d/b/a LACKS HOME FURNISHINGS**

By: *[signature]* MELVIN LACK
Its: President

Lacks Home Furnishings
Exhibit A

Store List

| Store # | Name | Address | City | State | Zip | Open Date | Selling Sq Ft |
|---|---|---|---|---|---|---|---|
| **Stores** | | | | | | | |
| 101 | BEEVILLE | 314 North Washington | Beeville | TX | 78102 | 1938 | 22,500 |
| 104 | ANNAVILLE | 9510 Leopard | Corpus Christi | TX | 78410 | 1946 | 17,000 |
| 105 | PORT LAVACA | 1019 South Highway 35 | Port Lavaca | TX | 77979 | 1948 | 25,000 |
| 106 | VICTORIA NORTH | 5802 North Navarro | Victoria | TX | 77904 | 1958 | 46,500 |
| 107 | EL CAMPO | 1817 North Mechanic | El Campo | TX | 77437 | 1960 | 30,000 |
| 108 | ALICE | 1818 East Main | Alice | TX | 78332 | 1961 | 35,500 |
| 111 | BAY CITY | 3333 Avenue F | Bay City | TX | 77414 | 1965 | 34,000 |
| 112 | VICTORIA CLR. | 3607 North Navarro | Victoria | TX | 77901 | 1967 | 45,000 |
| 114 | BRAZOSPORT | 60 Lack Lane | Clute | TX | 77531 | 1969 | 34,000 |
| 115 | AUSTIN | 2020 West Anderson Lane | Austin | TX | 78757 | 1970 | 46,000 |
| 116 | CORPUS CHRISTI | 3901 S Padre Island Dr. | Corpus Christi | TX | 78415 | 1971 | 70,000 |
| 117 | NEW BRAUNFELS | 971 West San Antonio | New Braunfels | TX | 78130 | 1972 | 25,000 |
| 118 | TEMPLE | 2100 S 61st @ Loop 363 | Temple | TX | 76504 | 1973 | 49,000 |
| 120 | SAN ANTONIO | 2600 SW Military Dr. | San Antonio | TX | 78224 | 1972 | 48,000 |
| 123 | AUSTIN | 4001 South Lamar | Austin | TX | 78704 | 1974 | 46,000 |
| 124 | SINTON | 113 West Borden | Sinton | TX | 78387 | 1974 | 13,000 |
| 125 | SAN ANTONIO | 8611 Perrin Beitel Road | San Antonio | TX | 78217 | 1977 | 44,000 |
| 126 | DEL RIO | 2400 Veterans Blvd | Del Rio | TX | 78840 | 1978 | 30,000 |
| 127 | AUSTIN | 13530 Hwy 183 North | Austin | TX | 78750 | 1978 | 60,000 |
| 128 | KILLEEN | 1001 South Fort Hood Rd | Killeen | TX | 76541 | 1979 | 42,000 |
| 130 | SAN ANGELO | 4002 Sunset Drive | San Angelo | TX | 76904 | 1982 | 36,000 |
| 131 | PORTLAND | 1550 Wildcat Drive | Portland | TX | 78374 | 1986 | 30,000 |
| 132 | UVALDE | 2330 East Main | Uvalde | TX | 78801 | 1983 | 30,000 |
| 133 | SAN ANTONIO | 6838 Bandera Road | Leon Valley | TX | 78238 | 1984 | 45,000 |
| 134 | ODESSA | 2004 E 42nd Street | Odessa | TX | 79762 | 1984 | 50,000 |
| 137 | LUBBOCK | 5741 50th St @ Loop 289 | Lubbock | TX | 79424 | 1986 | 50,000 |
| 139 | LUBBOCK | 4602 Avenue Q | Lubbock | TX | 79412 | 1989 | 37,000 |
| 140 | MIDLAND | 3111 Cuthbert | Midland | TX | 79701 | 1993 | 60,000 |
| 141 | ABILENE | 6381 Buffalo Gap Road | Abilene | TX | 79606 | 1995 | 37,500 |
| 143 | LONGVIEW | 3110 H.G. Mosley Pkwy | Longview | TX | 75605 | 1995 | 37,500 |
| 144 | WACO | 4800 Franklin Avenue | Waco | TX | 76710 | 1986 | 50,000 |
| 146 | BRYAN/COL. ST | 2501 Texas Ave. | College Station | TX | 77840 | 1997 | 45,500 |
| 147 | SAN ANTONIO | 11791 Bandera Road | San Antonio | TX | 78250 | 2002 | 45,000 |
| 148 | SAN ANTONIO | 18603 Blanco Road | San Antonio | TX | 78258 | 2003 | 45,000 |
| 149 | TYLER | 1817 Troup Highway | Tyler | TX | 75701 | 2004 | 44,000 |
| 150 | LUFKIN | 2934 S. John Redditt Dr. | Lufkin | TX | 75904 | 2006 | 42,475 |
| 36 | | | | | | | 40,208 |

# Lacks Home Furnishings
## Exhibit A
### Store List

| Store # | Name | Address | City | State | Zip | Open Date | Selling Sq Ft |
|---|---|---|---|---|---|---|---|
| **Warehouse** | | | | | | | |
| 661 | Victoria Service Center | | | | | | |
| 892 | SA Distribution Center | | | | | | |
| 879 | Central Delivery Facility | | | | | | |
| 885 | Central Delivery Facility | | | | | | |
| 889 | Central Delivery Facility | | | | | | |
| 899 | Central Delivery Facility | | | | | | |
| 982-995 | Credit Collection Centers | | | | | | |
| 705-709 | Returns/Damages/Out of Carton | | | | | | |

## Lacks Home Furnishings
## Exhibit B

**Advertising & Supervision Expense Budget**

**Advertising**
| | |
|---|---:|
| Media | 1,135,749 |
| Signs | 278,028 |
| Sign Walkers | 374,700 |
| Subtotal advertising | 1,788,477 |

**Supervision**
| | |
|---|---:|
| Fees | 553,211 |
| Travel and insurance | 90,061 |
| Subtotal supervision | 643,272 |

| | |
|---|---:|
| Total Expenses | 2,431,749 |

Hilco Merchant Resources, LLC                                        11/15/2010

## Lacks Home Furnishings
### Exhibit C

| Sale Expenses | | | | |
|---|---|---|---|---|
| **Expenses** | Hilco Expense | Company Related Expense | Total Expense | Excluded DC Expense (1) |
| **Store Payroll** | | | | |
| Salaries & Bonus | - | 3,067,103 | 3,067,103 | - |
| Incentives (2) | - | 153,355 | 153,355 | - |
| Benefits (3) | - | 588,884 | 588,884 | - |
| **Total Store Payroll** | - | 3,809,342 | 3,809,342 | - |
| | | | | |
| Occupancy (4) | - | 1,959,909 | 1,959,909 | - |
| Advertising | 1,788,477 | | 1,788,477 | - |
| Inventory Expense (5) | - | 215,404 | 215,404 | - |
| DC Payroll & Benefits (3) | - | 606,899 | 606,899 | 416,159 |
| DC Occupancy (4) | - | 567,839 | 567,839 | 389,375 |
| Bank & Credit Card Fee | - | 565,892 | 565,892 | - |
| Other store expenses (6) | - | 81,857 | 81,857 | - |
| Consultant Supervision | 643,272 | - | 643,272 | - |
| | | | | |
| Total Expenses | 2,431,749 | 7,807,142 | 10,238,891 | 805,534 |

**Note(s):**
1. Reflects expenses associated with operating DC as a result of the WARN Act.
2. Incentives are capped at 5% of base payroll.
3. Benefits are capped at 19.2% of base payroll.
4. Occupancy is capped on a per diem basis by location per Exhibit D.
5. Reflects freight expense related to augment.
6. Includes miscellaneous store operating expenses not to exceed $300 per store per week.

Hilco Merchant Resources, LLC                                                                                                          11/15/2010

Lacks Home Furnishings
Exhibit D

Occupancy

| Store # | Store Name | Rent | Advaloreum Taxes | Cellular Communications | Communications | Equipment Rental | Insurance Expense | Misc Repairs | Repairs and Maint | Service & Sub | Utilities | Vehicle Fuel, license | Vehicle Repair, Maint | Total Occupancy |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Per Diem | | | | | | |
| 101 | BEEVILLE | 251 | 25 | - | 21 | 3 | 45 | 29 | 22 | 25 | 76 | 4 | 7 | 507 |
| 104 | ANNAVILLE | 147 | 32 | - | 18 | 3 | 35 | 11 | 18 | 13 | 63 | - | - | 339 |
| 105 | PORT LAVACA | 176 | 41 | - | 24 | 3 | 45 | 31 | 20 | 23 | 66 | - | - | 427 |
| 106 | VICTORIA NORTH | 372 | 319 | - | 31 | 7 | 61 | 36 | 58 | 24 | 123 | 4 | - | 1,035 |
| 107 | EL CAMPO | 206 | 34 | 1 | 23 | 3 | 42 | 33 | 33 | 31 | 93 | 1 | 6 | 507 |
| 108 | ALICE | 446 | 36 | - | 25 | 4 | 96 | 51 | 33 | 29 | 103 | 4 | 1 | 826 |
| 111 | BAY CITY | 175 | 84 | - | 24 | 3 | 41 | 31 | 43 | 16 | 104 | 1 | - | 521 |
| 112 | VICTORIA GLR | 350 | 562 | 2 | 32 | 4 | 78 | 63 | 78 | 34 | 230 | 14 | 14 | 1,476 |
| 114 | BRAZOSPORT | 405 | 30 | 1 | 25 | 10 | 64 | 42 | 12 | 31 | 79 | 12 | 3 | 708 |
| 115 | AUSTIN | 449 | 94 | - | 26 | 4 | 63 | 46 | 39 | 37 | 154 | - | - | 916 |
| 116 | CORPUS CHRISTI | 601 | 90 | - | 26 | 8 | 78 | 64 | 77 | 56 | 132 | - | - | 1,137 |
| 117 | NEW BRAUNFELS | 417 | - | - | 25 | 12 | 39 | 26 | 25 | 26 | 48 | 0 | - | 610 |
| 118 | TEMPLE | 680 | 54 | 5 | 26 | 5 | 109 | 61 | 100 | 53 | 118 | 69 | 9 | 1,348 |
| 120 | SAN ANTONIO | 472 | 163 | - | 25 | 64 | 208 | 29 | 57 | 32 | 104 | - | - | 1,096 |
| 123 | AUSTIN | 942 | 144 | - | 34 | 4 | 60 | 52 | 104 | 29 | 172 | - | - | 1,551 |
| 124 | SINTON | 23 | - | - | 17 | 14 | 21 | 11 | 16 | 23 | 43 | 2 | - | 158 |
| 125 | SAN ANTONIO | 578 | 229 | - | 25 | 2 | 76 | 45 | 101 | 57 | 145 | - | - | 1,266 |
| 126 | DEL RIO | 310 | - | 6 | 29 | 9 | 68 | 22 | 16 | 13 | 123 | 5 | 5 | 600 |
| 127 | AUSTIN | 972 | 306 | - | 27 | 5 | 318 | 11 | 14 | 29 | 248 | - | - | 1,942 |
| 128 | KILLEEN | 208 | - | 4 | 23 | 16 | 68 | 37 | 85 | 29 | 99 | 37 | 6 | 755 |
| 130 | SAN ANGELO | 353 | 87 | 5 | 19 | 60 | 132 | 18 | 45 | 62 | 86 | 33 | 8 | 793 |
| 131 | PORTLAND | 302 | 54 | - | 18 | 58 | 67 | 33 | 24 | 13 | 119 | - | - | 601 |
| 132 | UVALDE | 224 | 44 | - | 27 | 4 | 34 | 19 | 37 | 13 | 88 | - | - | 546 |
| 133 | SAN ANTONIO | 321 | 122 | - | 25 | 21 | 56 | 9 | 68 | 24 | 78 | 7 | 0 | 706 |
| 134 | ODESSA | 823 | 299 | - | 27 | 2 | 51 | 144 | 145 | 29 | 137 | - | - | 2,045 |
| 137 | LUBBOCK | 820 | 191 | 13 | 28 | 82 | 213 | 18 | 34 | 52 | 119 | 74 | 36 | 2,046 |
| 139 | LUBBOCK | 367 | 112 | - | 22 | 4 | 89 | 11 | 12 | 62 | 65 | - | - | 1,366 |
| 140 | MIDLAND | 514 | 105 | 9 | 12 | 3 | 67 | 15 | 53 | 37 | 129 | - | - | 695 |
| 141 | ABILENE | 374 | 99 | 4 | 24 | 79 | 187 | 36 | 21 | 73 | 119 | 47 | 26 | 1,248 |
| 143 | LONGVIEW | 330 | 2 | 7 | 27 | 70 | 53 | 63 | 53 | 15 | 75 | 50 | 4 | 868 |
| 144 | WACO | 661 | 132 | 3 | 27 | 51 | 69 | 14 | 74 | 25 | 111 | 39 | 15 | 756 |
| 146 | BRYAN/COL ST | 702 | 102 | 5 | 27 | 56 | 67 | 36 | 156 | 26 | 113 | 27 | 0 | 1,199 |
| 147 | SAN ANTONIO | 1,111 | 291 | - | 20 | 49 | 75 | 16 | 32 | 30 | 130 | 37 | 17 | 1,342 |
| 148 | SAN ANTONIO | 1,113 | 586 | - | 31 | 4 | 42 | 33 | 77 | 41 | 120 | - | - | 1,699 |
| 149 | TYLER | 673 | 147 | 3 | 32 | 4 | 28 | 25 | 108 | 38 | 104 | 40 | 10 | 2,030 |
| 150 | LUFKIN | 611 | 139 | 7 | 27 | 27 | 40 | 42 | 12 | 15 | 105 | 44 | 26 | 1,218 |
| 36 | Total | 17,489 | 4,756 | 74 | 900 | 777 | 2,850 | 1,264 | 1,901 | 1,168 | 4,020 | 551 | 194 | 35,953 |
| | Per Week | 122,421 | 33,294 | 516 | 6,298 | 5,436 | 20,017 | 8,851 | 13,305 | 8,177 | 28,138 | 3,857 | 1,359 | 251,669 |
| | Per Store Week | 3,401 | 925 | 14 | 175 | 151 | 556 | 246 | 370 | 227 | 782 | 107 | 38 | 6,991 |

| Warehouse | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 661 | Victoria Service Center | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 892 | SA Distribution Center | 4,202 | 2,296 | - | 56 | 3,138 | 420 | (27) | 339 | 217 | 492 | 1,534 | 167 | 12,855 |
| 879 | Central Delivery Facility | 39 | 4 | 21 | 5 | 136 | 139 | (13) | 6 | 30 | 10 | 140 | 76 | 583 |
| 885 | Central Delivery Facility | 183 | 20 | 14 | 13 | 275 | 173 | 3 | 9 | 65 | 49 | 455 | 103 | 1,357 |
| 889 | Central Delivery Facility | 75 | 1 | 10 | 15 | 129 | 62 | 11 | 21 | 24 | 31 | 119 | 158 | 655 |
| 899 | Central Delivery Facility | 179 | 33 | 9 | 12 | 148 | 27 | 1 | 17 | 23 | 15 | 181 | 133 | 774 |
| 982-995 | Credit Collection Centers | - | - | 6 | - | - | - | - | - | - | - | - | - | - |
| 705-709 | Returns/Damages/Out of Cart | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Total | 4,678 | 2,354 | 60 | 100 | 3,825 | 821 | (25) | 391 | 359 | 596 | 2,428 | 637 | 16,224 |

Hilco Merchant Resources, LLC

11/15/2010