IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 10-60149 |
| LACK'S STORES, INCORPORATED, *ET AL.*,[1] § | |
| § | (Chapter 11) |
| § | Jointly Administered |
| DEBTORS. § | |

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES <u>FOR CASE PROFESSIONALS</u>**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 15, 2010 AT 2:30 P.M. AT THE UNITED STATES COURTHOUSE, COURTROOM 600, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS**      Page 1 of 11

US 618506v.4

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this *Motion to Establish Procedure for Monthly and Interim Compensation and Reimbursement of Expenses for Case Professionals* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estates, and, therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On November 16, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-referenced cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. As of the Date of this Motion, no official committee of unsecured creditors has been appointed.

6. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 327(a) & 331 and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## STATEMENT OF FACTS

A. The Debtors and Their 70-Year History

7. Lack's Stores, Incorporated ("Lack's") is a Texas corporation with its corporate headquarters located in Victoria, Texas. It is one of the largest independently-owned retail

furniture chains in the United States. Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances and home electronics.

8. The nucleus of the current company was formed on February 28, 1938 by David and Rebecca Lack, when they opened a small auto supply store in Beeville, Texas. Because of the chronic shortage of cars and new auto parts during World War II, the company diversified into furniture in an attempt to maintain sales volume. Furniture did well, and so became a growing segment of Lack's total business.

9. In 1952, by which time the company had expanded to five retail stores, Lack's made a commitment to become a furniture and appliance chain. It continued to carry auto supplies, tires and other hardware items at all locations, but the merchandising emphasis switched to home furnishings. The original automotive and hardware merchandise was eventually phased out in the 1970's.

10. Today, Lack's remains a family owned business that operates 36 retail home furnishing stores in 26 cities located in Texas.[2] These stores are supported by a 380,000 square foot state-of-the-art distribution center in Schertz, Texas, several cross-docking central delivery facilities, and a service center. According to surveys by Furniture/Today, an industry newspaper, Lack's sales volume place it among the top furniture retailers in the country. In 2007, Lack's was named Retailer of the Year by the National Home Furnishings Association.

11. Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store

---

[2] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS**        **Page 3 of 11**

US 618506v.4

and warehouse locations that are leased to Lack's.[3] The remaining store locations are leased by Lack's from third party lessors, including locations that are leased from lessors that are affiliated with various members of the Lack's family.

12. Since its inception, Lack's has financed a significant portion of its customers' purchases through the underwriting of "in store" financing. Indeed, over the last several years, Lack's has financed approximately 70% of all customer sales. The book amount of the customer notes receivable portfolio as of the Petition Date is more than $130,000,000. There are currently in excess of 75,000 customer notes receivable, the average balance of each note is approximately $1,700, and the weighted average remaining term of each note is approximately eighteen to twenty-four months.

13. Lack's services the customer notes portfolio with in-house employees. Lack's has historically collected approximately 95% of the balance of the customer notes receivable, even though they are generally considered to be "sub-prime" by many credit institutions.

14. Lack's revenue is derived from the sale of home furnishings and the interest earned from financing customer notes receivable. From February 1, 2010 (the beginning of Lack's fiscal year) through the Petition Date, Lack's has generated revenue of more than $122,000,000 and has operating profit of more than $1,000,000. Lack's currently employs approximately 886 persons.

B. **Secured Credit Facility**

15. Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit

---

[3] Merchandise Acceptance Corporation ("Merchandise Acceptance") and Lack's Furniture Centers, Inc. ("Lack's Furniture") are also wholly-owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS**       **Page 4 of 11**

US 618506v.4

Agreement") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "Agent"), and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[4]  Lack's relationship with many of the Senior Lenders under the Senior Credit Agreement (or prior versions thereof) dates back to 1999.  The Senior Credit Agreement, with a stated maturity date of October 31, 2010,[5] is a revolving credit facility.  From 1999 through the maturity date, Lack's had never been in monetary default under the operative credit documents.

16.  As of the Petition Date, the aggregate principal amount of the advances currently outstanding under the Senior Credit Agreement is approximately $86,000,000, having been gradually reduced from $105,000,000 since January of 2009.  Lack's obligations under the Senior Credit Agreement are guaranteed by Merchandise Acceptance, Lack's Furniture, Lack Properties, and Melvin Lack.[6]  The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate.  The Senior Lenders do not, however, have dominion over all of the Debtors' bank accounts.

17.  In addition to liens held by the Senior Lenders, certain of the properties owned by Lack Properties and leased to Lack's are subject to mortgages held by third party lenders, including stores in Bay City, Abilene, Wichita Falls (now closed), and Longview, as well as warehouse/distribution centers in Schertz and San Antonio.

---

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

[5] By agreement, the maturity date was subsequently extended through and including November 12, 2010.

**C.     Trade Creditors**

18.    In the ordinary course of business, the Debtors purchase merchandise from an assortment of vendors, including furniture, bedding, home electronics and appliance manufacturers. The Debtors estimate that, as of the Petition Date, the general unsecured claims held by trade vendors against their respective estates are no more than $12,000,000 in the aggregate. The Debtors' three largest vendors[7] account for approximately 60% of the amounts payable to trade creditors.

**D.     Events Leading to the Chapter 11 Cases**

19.    As a result of the economic slowdown, consumer demand in general – and the demand for home furnishings in particular – decreased sharply starting in the second half of 2008. The decreased demand caused an approximate 20% decrease in Lack's revenues starting at the end of its 2008 fiscal year. Notwithstanding this decrease, Lack's was able to reduce expenses and reach a monthly breakeven position by February 2009. The effort to recover revenues and control expenses has continued. Revenue and profitability have continued to improve during 2010.

20.    At the same time, the national economic slowdown resulted in an unprecedented tightening of credit markets. The Senior Lenders stated that they would not refinance or restructure the obligations under the Senior Credit Agreement on terms which would allow the Debtors to continue their operations. The Debtors have been unable to identify an alternative financing source for their business operations since the overwhelming majority of their

---

[6] Mr. Lack's obligations under the guarantee are limited. Mr. Lack is not a debtor in these Cases and is represented by separate counsel in the Cases.

[7] Comprised of Sealy Mattress Company, Lane Furniture Industries, and Brownchild Ltd. Inc.

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS**     **Page 6 of 11**

US 618506v.4

customers are rated sub-prime, notwithstanding those customers' and Lack's great historical and current track record of payment and collection, respectively.

21.     Without an alternative funding source, Lack's will be unable to finance the purchase of new inventory or to underwrite additional customer notes receivable.  As a consequence, the Debtors determined that it was appropriate to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and equity holders and to conduct an orderly – as opposed to forced – liquidation, utilizing cash collateral to effect the wind-down which is anticipated to pay all creditors in full.

### E.     The Chapter 11 Cases

22.     The Debtors submit that these Cases will have two macro components or goals.  First, the Debtors will request that the Court approve the commencement of "Store Closing Sales" so that the Debtors (working with Hilco Merchant Resources, LLC ("Hilco")[8]) may sell their remaining inventory in a prompt and efficient manner designed to maximize recoveries and reduce the costs of operations.  Second, the Debtors intend to propose a chapter 11 plan that will provide for the collection of the customer notes receivable portfolio in the ordinary course of business and the marketing and disposition of their real estate interests over time and in such a manner as to maximize their value for the benefit of the estates.

23.     The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other miscellaneous assets will satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.

**RELIEF REQUESTED**

24. Pursuant to Bankruptcy Code § 331, all professionals employed in bankruptcy cases (the "Professionals") are entitled to submit applications for interim compensation and reimbursement of expenses every 120 days "or more often if the Court permits." 11 U.S.C. § 331.

25. The Debtors hereby request that the Court enter an Order establishing a procedure for compensating and reimbursing professionals on a monthly basis. Such a procedure will provide: (a) the Court and all other parties an effective means to monitor the fees incurred; (b) the Professionals, whose time commitment is expected to be significant, a means to receive interim payments for their services; and (c) the Debtors a means to avoid irregular payments that might result in large depletions of their cash flow.

26. In summary, the requested monthly compensation procedure would allow (but not require) all Professionals retained in the Debtors' Cases[9] to present to the Debtors a detailed statement of services rendered and expenses incurred for the prior month period (each, a "Period"). If no timely objection is filed, the Debtors would promptly pay eighty percent (80%) of the amount of fees incurred for the Period, with a twenty percent (20%) holdback, and one hundred percent (100%) of out-of-pocket expenses for the Period. These payments would be subject to the Court's subsequent approval as part of the normal fee application process approximately every 120 days.

27. The Debtors propose that the monthly payment of compensation and reimbursement of expenses be structured as follows:

---

[8] Pursuant to the Debtors' agreement with Hilco, Hilco is permitted to joint venture with SB Capital Group, LLC with respect to the "Store Closing" sales.

[9] Unless otherwise provided in an Order of this Court approving the employment of a Professional.

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS**     **Page 8 of 11**

US 618506v.4

a. On or before the last day of each month following the month for which compensation is sought, each Professional or each member of an official committee of the Cases (a "Committee Member") will serve a detailed statement of services rendered and/or expenses[10] incurred during the prior month(s) upon (i) the Debtors, (ii) the Debtors' counsel, (iii) counsel to the general unsecured creditors committee, if any, (iv) the Office of the United States Trustee; and (v) counsel for Agent to the Senior Lenders (collectively, the "Parties"). Each entity receiving a statement will have fifteen days after the date of receipt to review and raise written objections, if any, to each statement. At the expiration of the fifteen day objection period, the Debtors shall promptly pay eighty percent (80%) of the fees and one hundred percent (100%) of the out-of-pocket expenses identified in each monthly statement, except such fees or expenses to which an objection has been served by one of the Parties.

b. In the event that one of the Parties has an objection to the compensation or reimbursement sought in a particular monthly statement, such Party shall, within such fifteen days after the receipt of the statement, serve upon the Parties a written "Notice of Objection to Fee Statement," with a statement setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting Party and the Professional to whose statement an objection has been served shall attempt to reach an agreement regarding the correct payment to be made. If the Parties are unable to reach an agreement on the objection within fifteen days after receipt of such objection, the Professional whose fee statement is subject to an objection shall have the option of (i) filing the objection, together with a request for payment of the disputed amount, with the Court, or (ii) foregoing payment of the disputed amount until the next interim fee application hearing, at which time the Court will consider and dispose of the objection if payment of the disputed amount is requested. However, the Debtors will be required to pay promptly that percentage set forth above of any portion of the fees and disbursements requested that are not the subject of a Notice of Objection to Fee Statement.

c. The first statement shall be submitted by each Professional and Committee Member, as applicable, by December 31, 2010 and shall cover the period from the Petition Date through November 30, 2010.

d. Approximately every three months, each of the Professionals shall file with the Court and serve on the parties identified in subparagraph (a) above, on or before the thirtieth day following the last day of the compensation period for which compensation is sought, an application for interim Court approval and allowance, pursuant to Bankruptcy Code

---

[10] Committee Members are only entitled to seek reimbursement of reasonable expenses incurred in accordance with 11 U.S.C. § 503(b)(3)(F) and pursuant to the terms of the proposed order.

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS** Page 9 of 11

US 618506v.4

      § 331, of compensation and reimbursement of expenses incurred during the prior three months. The first such interim fee application shall be filed by each Professional on or before March 31, 2011 and shall cover the period from the Petition Date through February 28, 2011. Any Professional who fails to file an application when due as directed by this subparagraph shall be ineligible to receive further monthly or interim payments of fees or expenses as provided herein until such time as the application is submitted.

  e. The pendency of an objection or a Court order stating that payment of compensation or reimbursement of expenses was improper as to a particular monthly statement shall not disqualify a Professional or Committee Member from the future payment of monthly compensation or reimbursement of expenses as set forth above, except as otherwise directed by an Order of this Court.

  f. Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall bind any party in interest or the Court with respect to the allowance of applications for compensation and reimbursement of Professionals or Committee Members.

  g. The Debtors will include all payments to Professionals or Committee Members on their monthly operating reports, detailed so as to state the amount paid to each of the Professionals and Committee Members.

28. The procedure suggested herein will enable all parties to closely monitor costs of administration and the Debtors to implement efficient cash management. Any case Professional desiring to do so would be allowed to submit monthly statements in accordance with the procedures outlines above.

## PRAYER

The Debtors respectfully request that the Court enter an Order (a) authorizing the Professionals to receive monthly and interim compensation and reimbursement of expenses in accordance with the procedures described herein; and (b) granting such other and further relief to which they may be justly entitled.

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS** Page 10 of 11

US 618506v.4

Dated:  November 19, 2010

        Respectfully submitted,

        **VINSON & ELKINS LLP**

By: /s/ *Michaela C. Crocker*
     Daniel C. Stewart, SBT #19206500
     Paul E. Heath, SBT #093555050
     Michaela C. Crocker, SBT #24031985
     Richard H. London, SBT #24032678
     2001 Ross Avenue, Suite 3700
     Dallas, Texas 75201
     Tel: 214.220.7700
     Fax: 214.999.7787
     mcrocker@velaw.com
     rlondon@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS**

**DEBTORS' MOTION TO ESTABLISH PROCEDURE FOR MONTHLY AND INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS**    **Page 11 of 11**

US 618506v.4