IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 10-60149 |
| LACK'S STORES, INCORPORATED, *ET AL.*,[1] § | |
| § | (Chapter 11) |
| § | (Jointly Administered) |
| DEBTORS. § | |

**DEBTORS' MOTION FOR ORDER APPROVING PROCEDURES FOR REJECTING UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 15, 2010 AT 2:30 P.M. AT THE UNITED STATES COURTHOUSE, COURTROOM 600, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

Lack's Stores, Incorporated and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors"), file this *Motion for Order Approving Procedures for Rejecting Unexpired Leases of Nonresidential Real Property* (the "Motion"). In support of the Motion, the Debtors would respectfully show the Court as follows:

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

**DEBTORS' MOTION FOR ORDER APPROVING PROCEDURES FOR REJECTING
UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**                                                    Page 1 of 10

US 621013v.6

**JURISDICTION AND PROCEDURAL BACKGROUND**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estates; and therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On November 16, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-referenced cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. As of the Date of this Motion, no official committee of unsecured creditors has been appointed.

**STATEMENT OF FACTS**

**A.    The Debtors and Their 70-Year History**

6. Lack's Stores, Incorporated ("Lack's") is a Texas corporation with its corporate headquarters located in Victoria, Texas. It is one of the largest independently-owned retail furniture chains in the United States. Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances and home electronics.

7. The nucleus of the current company was formed on February 28, 1938 by David and Rebecca Lack, when they opened a small auto supply store in Beeville, Texas. Because of the chronic shortage of cars and new auto parts during World War II, the company diversified

into furniture in an attempt to maintain sales volume. Furniture did well, and so became a growing segment of Lack's total business.

8.      In 1952, by which time the company had expanded to five retail stores, Lack's made a commitment to become a furniture and appliance chain. It continued to carry auto supplies, tires and other hardware items at all locations, but the merchandising emphasis switched to home furnishings. The original automotive and hardware merchandise was eventually phased out in the 1970's.

9.      Today, Lack's remains a family owned business that operates 36 retail home furnishing stores in 26 cities located in Texas.[2] These stores are supported by a 380,000 square foot state-of-the-art distribution center in Schertz, Texas, several cross-docking central delivery facilities, and a service center. According to surveys by Furniture/Today, an industry newspaper, Lack's sales volume place it among the top furniture retailers in the country. In 2007, Lack's was named Retailer of the Year by the National Home Furnishings Association.

10.     Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store and warehouse locations that are leased to Lack's.[3] The remaining store locations are leased by Lack's from third party lessors, including locations that are leased from lessors that are affiliated with various members of the Lack's family.

11.     Since its inception, Lack's has financed a significant portion of its customers' purchases through the underwriting of "in store" financing. Indeed, over the last several years,

---

[2] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

**DEBTORS' MOTION FOR ORDER APPROVING PROCEDURES FOR REJECTING**
**UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**                                                    **Page 3 of 10**

US 621013v.6

Lack's has financed approximately 70% of all customer sales. The book amount of the customer notes receivable portfolio as of the Petition Date is more than $130,000,000. There are currently in excess of 75,000 customer notes receivable, the average balance of each note is approximately $1,700, and the weighted average remaining term of each note is approximately eighteen to twenty-four months.

12. Lack's services the customer notes portfolio with in-house employees. Lack's has historically collected approximately 95% of the balance of the customer notes receivable, even though they are generally considered to be "sub-prime" by many credit institutions.

13. Lack's revenue is derived from the sale of home furnishings and the interest earned from financing customer notes receivable. From February 1, 2010 (the beginning of Lack's fiscal year) through the Petition Date, Lack's has generated revenue of more than $122,000,000 and has operating profit of more than $1,000,000. Lack's currently employs approximately 886 persons

**B.     Secured Credit Facility**

14. Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "<u>Senior Credit Agreement</u>") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "<u>Agent</u>"), and the other lenders from time to time party thereto (together with the Agent, the "<u>Senior Lenders</u>").[4] Lack's relationship with many of the Senior Lenders under the Senior Credit Agreement (or prior versions thereof) dates back to 1999. The Senior Credit Agreement,

---

[3] Merchandise Acceptance Corporation ("<u>Merchandise Acceptance</u>") and Lack's Furniture Centers, Inc. ("<u>Lack's Furniture</u>") are also wholly-owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

with a stated maturity date of October 31, 2010,[5] is a revolving credit facility. From 1999 through the maturity date, Lack's had never been in monetary default under the operative credit documents.

15. As of the Petition Date, the aggregate principal amount of the advances currently outstanding under the Senior Credit Agreement is approximately $86,000,000, having been gradually reduced from $105,000,000 since January of 2009. Lack's obligations under the Senior Credit Agreement are guaranteed by Merchandise Acceptance, Lack's Furniture, Lack Properties, and Melvin Lack.[6] The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate. The Senior Lenders do not, however, have dominion over all of the Debtors' bank accounts.

16. In addition to liens held by the Senior Lenders, certain of the properties owned by Lack Properties and leased to Lack's are subject to mortgages held by third party lenders, including stores in Bay City, Abilene, Wichita Falls (now closed), and Longview, as well as warehouse/distribution centers in Schertz and San Antonio.

**C.     Trade Creditors**

17. In the ordinary course of business, the Debtors purchase merchandise from an assortment of vendors, including furniture, bedding, home electronics and appliance manufacturers. The Debtors estimate that, as of the Petition Date, the general unsecured claims held by trade vendors against their respective estates are no more than $12,000,000 in the

---

[5] By agreement, the maturity date was subsequently extended through and including November 12, 2010.

[6] Mr. Lack's obligations under the guarantee are limited. Mr. Lack is not a debtor in these Cases and is represented by separate counsel in the Cases.

aggregate. The Debtors' three largest vendors[7] account for approximately 60% of the amounts payable to trade creditors.

### D. Events Leading to the Chapter 11 Cases

18. As a result of the economic slowdown, consumer demand in general – and the demand for home furnishings in particular – decreased sharply starting in the second half of 2008. The decreased demand caused an approximate 20% decrease in Lack's revenues starting at the end of its 2008 fiscal year. Notwithstanding this decrease, Lack's was able to reduce expenses and reach a monthly breakeven position by February 2009. The effort to recover revenues and control expenses has continued. Revenue and profitability have continued to improve during 2010.

19. At the same time, the national economic slowdown resulted in an unprecedented tightening of credit markets. The Senior Lenders stated that they would not refinance or restructure the obligations under the Senior Credit Agreement on terms which would allow the Debtors to continue their operations. The Debtors have been unable to identify an alternative financing source for their business operations since the overwhelming majority of their customers are rated sub-prime, notwithstanding those customers' and Lack's great historical and current track record of payment and collection, respectively.

20. Without an alternative funding source, Lack's will be unable to finance the purchase of new inventory or to underwrite additional customer notes receivable. As a consequence, the Debtors determined that it was appropriate to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and equity holders and to

---

[7] Comprised of Sealy Mattress Company, Lane Furniture Industries, and Brownchild Ltd. Inc.

conduct an orderly – as opposed to forced – liquidation, utilizing cash collateral to effect the wind-down which is anticipated to pay all creditors in full.

**E.     The Chapter 11 Cases**

21.     The Debtors submit that these Cases will have two macro components or goals. First, the Debtors will request that the Court approve the commencement of "Store Closing Sales" so that the Debtors (working with Hilco Merchant Resources, LLC ("Hilco")[8]) may sell their remaining inventory in a prompt and efficient manner designed to maximize recoveries and reduce the costs of operations.  Second, the Debtors intend to propose a chapter 11 plan that will provide for the collection of the customer notes receivable portfolio in the ordinary course of business and the marketing and disposition of their real estate interests over time and in such a manner as to maximize their value for the benefit of the estates.

22.     The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other miscellaneous assets will satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.

### RELIEF REQUESTED

23.     By this Motion, the Debtors seek entry of an order (the "Order") approving procedures for rejecting unexpired leases of nonresidential real property.  Because the Debtors intend to conduct an orderly liquidation of their inventory through these Cases, certain of the

---

[8] Pursuant to the Debtors' agreement with Hilco, Hilco is permitted to joint venture with SB Capital Group, LLC with respect to the "Store Closing" sales.

Debtors' unexpired nonresidential real property leases (the "Leases")[9] may, on a rolling basis, become of no value or benefit to the Debtors' estates.[10] The Debtors wish to continue to occupy the premises associated with the Leases in the short-term; however, the Debtors seek approval of the procedures herein to accomplish rejection of any burdensome Leases at the appropriate time, without having to further petition this Court to reject each Lease separately.

24. The Debtors propose the following procedures to accomplish the rejection of the Leases (the "Lease Rejection Procedures"):

   a. The Debtors will give the landlord (each a "Landlord") of a Lease to be rejected at least ten (10) days' written notice (the "Notice") of their intent to vacate the premises and reject a Lease.

   b. The Notice, the form of which is attached hereto as **Exhibit "B"**, will set forth the effective date (the "Effective Date") of the Lease rejection, which will be at least ten days (10) days from the date of the Notice.

   c. Each Landlord (each a "Rejection Claimant") will have thirty (30) days after the Effective Date to file a claim (a "Claim") for damages, including any rejection damages under 11 U.S.C. § 365. Any such claims must be received by Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent ("KCC"), no later than thirty (30) days after the Effective Date. The mailing address for KCC is: Lacks Claims Processing, c/o Kurtzman Carson Consultants, 2335 Alaska Avenue, El Segundo, CA 90245.

25. Under Bankruptcy Code § 365 a debtor-in-possession may "subject to the Court's approval . . . assume or reject any executory contract and unexpired lease of the debtor." 11 U.S.C. § 365(a).

---

[9] The Leases are listed on the attached **Exhibit "A."** The Debtors reserve the right to amend Exhibit A to include any additional leases that may exist.

[10] The Debtors intend to retain a third party to assist them in the marketing of their real estate (both leasehold and fee simple interests) and the analysis of the value of those interests. Thus, notwithstanding the conclusion of a store closing sale, the Debtors may determine not to reject an unexpired lease of real property if, among other things, they expect the lease to have value.

**DEBTORS' MOTION FOR ORDER APPROVING PROCEDURES FOR REJECTING**
**UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**                          **Page 8 of 10**

US 621013v.6

26.     Bankruptcy Code § 365 does not provide a standard for determining when rejection of an unexpired lease is appropriate. *In re Monarch Tool & Mfg. Co.*, 114 B.R. 134 (Bankr. S.D. Ohio 1990). However, most courts acknowledge that the business judgment standard should be applied to determine whether to authorize the rejection of executory contracts and unexpired leases. *See In re Liljeberg Enters., Inc.*, 304 F.3d 410, 438 (5th Cir. 2002); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 107 (3d Cir. 1990); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36-40 (3d Cir. 1989) (holding that the rejection of an executory contract is appropriate upon the finding that such rejection would be beneficial to the debtor's estate); *In re Gardinier, Inc.*, 831 F.2d 974, 976 n.2 (11th Cir. 1987); *In re Federated Dep't Stores, Inc.*, 131 B.R. 808, 811 (Bankr. S.D. Ohio 1991) (citing, *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) and *Group of Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523 (1943)). Further, the burden or hardship on the contract party to a rejected contract is not a factor to be considered. *Borman's, Inc. v. Allied Supermarkets, Inc.*, 706 F.2d 187, 189 (6th Cir. 1983) (dicta), *cert. denied,* 464 U.S. 908 (1983) (emphasis added).

27.     In the exercise of their sound business judgment, and in light of the planned orderly liquidation of Lack's inventory, the Debtors will reject from time to time the Leases that are determined to be burdensome and of no benefit to their estates. The Debtors, by separate motion, have requested authority to conduct store closing sales, and they intend to close their stores after the store closing sales are completed. Once the Stores are closed, the Leases relating to the stores may no longer be needed and may be of little or no value to the Debtors' estates. Thus, the rejection of certain Leases, in accordance with the Lease Rejection Procedures set forth

**DEBTORS' MOTION FOR ORDER APPROVING PROCEDURES FOR REJECTING**
**UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**          **Page 9 of 10**

US 621013v.6

herein, is in the best interest of the Debtors' estates as it will permit the Debtors to reject burdensome leases and assist in the orderly and efficient administration of these estates.

## PRAYER

The Debtors respectfully request that this Court enter an order approving the Lease Rejection Procedures and any such other and further relief to which they may be justly entitled.

Dated:  November 19, 2010

        Respectfully submitted,

        **VINSON & ELKINS LLP**

        By: /s/ *Michaela C. Crocker*
            Daniel C. Stewart, SBT #19206500
            Paul E. Heath, SBT #093555050
            Michaela C. Crocker, SBT #24031985
            Richard H. London, SBT #24032678
            2001 Ross Avenue, Suite 3700
            Dallas, Texas 75201
            Tel: 214.220.7700
            Fax: 214.999.7787
            mcrocker@velaw.com
            rlondon@velaw.com

        **PROPOSED ATTORNEYS FOR THE DEBTORS**

**DEBTORS' MOTION FOR ORDER APPROVING PROCEDURES FOR REJECTING**
**UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**    **Page 10 of 10**

US 621013v.6