

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

ENTERED
11/22/2010

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 10-60149 |
| LACK'S STORES, INCORPORATED, *ET AL.*,[1] § | (Chapter 11) |
| § | (Jointly Administered) |
| § | |
| DEBTORS. § | |

### INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

[Related to Dkt. No. 10]

At the hearing held on November 17, 2010 (the "Hearing"), the Court considered the *Emergency Motion for Approval of Interim and Final Use of Cash Collateral and Grant of Adequate Protection* (the "Motion")[2] filed by the above-referenced debtors and debtors in possession (collectively, the "Debtors").

### Final Cash Collateral Hearing

A final hearing on the Motion shall be held on **December 15, 2010, at 2:30 p.m.** (the "Final Hearing"), before the Honorable Jeff Bohm, United States Bankruptcy Judge, at the United States Bankruptcy Court, 515 Rusk Street, Courtroom 600, Houston, Texas Objections to the relief requested in the Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the following parties so that any such objections are received on or before 5:00 p.m. (Central time) on December 10, 2010:

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

[2] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION                                      Page 1 of 7
US 628332v.5

*Counsel for Debtors:*

Daniel C. Stewart
Paul E. Heath
Richard H. London
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX  75201
Fax: 214-220-7716

*Counsel for the Senior Lenders:*

Robert Jones
**PATTON BOGGS LLP**
2000 McKinney Ave
Suite 1700
Dallas, Texas 75201
Fax: 214-758-1550

*United States Trustee:*

Hector Duran
**OFFICE OF THE U.S. TRUSTEE**
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax: 713-718-4670

### Findings of Fact and Conclusions of Law

The Court has considered the Motion, the objection thereto, the evidence proffered or presented at the Hearing, and the arguments of counsel made at the Hearing.  For the reasons set forth below and those stated on the record at the Hearing,[3] the Court hereby finds and concludes as follows:

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.     Each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 16, 2010 (the "Petition Date").

C.     The Debtors' "first day" motions, including the Motion, were considered by the Court at the Hearing.  Testifying at the Hearing, by direct testimony and/or proffer, were Melvin Lack, President and Chief Executive Officer of Lack's Furniture Stores, Incorporated ("Lack's"),

---

[3] Such findings of fact and conclusions of law are expressly incorporated into this Interim Order.

Stuart Walker, Director with Huron Consulting Group, the Debtors' proposed financial advisors, and Joseph Malfitano, Vice President and Deputy General Counsel of Hilco Merchant Resources, LLC, the Debtors' proposed liquidation consultant (collectively, the "Witnesses"). No other witnesses testified at the Hearing. The Court finds that the testimony given by and/or proffered on behalf the Witnesses was credible and is accepted by this Court as true and accurate.

D.  Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit Agreement") among Lack's, The CIT Group / Business Credit, Inc. (in such capacity, the "Agent"), as agent, and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[4] As of the Petition Date, the aggregate principal amount currently outstanding under the Senior Credit Agreement is alleged to be approximately $86,000,000 by the Senior Lenders. The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate.

E.  The Debtors require the use of the cash collateral (the "Cash Collateral") of the Agent and the Senior Lenders in order to pay costs and expenses, including, but not limited to, wages, salaries, rent, professional fees, and general and administrative operating expenses, that arise in the administration of these Cases and in the maintenance and preservation of the Debtors' businesses and asset value. Without the authority to use Cash Collateral as granted by this Interim Order, the Debtors' estates will suffer immediate and irreparable harm.

---

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; JPMorgan Chase Bank, N.A.; and Capital One Leverage Finance Corp.

F. Nothing in this *Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection* (the "Interim Order") shall constitute a determination of the existence, validity, or priority of any pre-petition security interest or lien of the Agent or the Senior Lenders, any other secured creditor, or any other party in interest, nor shall the positions of the Debtors reflected in this Interim Order be construed as admissions of any factual or legal issues between such parties. Except for post-petition replacement liens and other forms of adequate protection, this Interim Order shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to the Motion's request for subsequent cash collateral orders.

G. The Debtors have authority to use alleged Cash Collateral of the Agent and the Senior Lenders, on an interim basis, on the terms and conditions provided for herein, *nunc pro tunc*, commencing on the Petition Date and expiring at the conclusion of the Final Hearing (the "Interim Period").

H. The Agent's interest in the Cash Collateral, on behalf of the Secured Lenders, is adequately protected by, among other things: (1) the existence of a several million dollar equity cushion in the collateral allegedly securing the Debtors' obligations under the Senior Credit Agreement, (2) the payments of both principal an interest allegedly owing under the Senior Credit Agreement, as reflected in the interim budget attached hereto as **Exhibit "A"** (the "Interim Budget"), (3) the retention of the Debtors' notes receivable collection group; and (4) the replacement liens and reasonable access to information respecting the Debtors' business operations to the Agent, on behalf of the Secured Lenders, pursuant to the terms of this Interim Order.

I. Under the circumstances, notice of the Motion was appropriate and sufficient to the Agent and the Senior Lenders and other parties in interest for the limited purpose of this Interim Order.

J. Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this is an Interim Order and will remain in effect pending entry of a final order on the Motion.

K. Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Motion is hereby approved.

## ORDER

Accordingly, it is therefore **ORDERED**:

1. Pursuant to the terms of this Interim Order and as set forth in the Interim Budget, the Debtors may use cash collateral, including any Cash Collateral of the Agent and the Senior Lenders, during the Interim Period. The Debtors' continued use of Cash Collateral thereafter shall be subject to further hearing or written agreement among the Agent and the Debtors, as memorialized in a stipulation filed with this Court. Any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week, on a line-item basis.

2. As adequate protection to the Agent on behalf of the Senior Lenders for the Debtors' use of Cash Collateral pursuant to Bankruptcy Code § 363(c) – and only to the extent of the Senior Lenders' (a) non-avoidable valid and perfected liens and actual interests in Cash Collateral, and (b) actual diminution in value of such interests in Cash Collateral as a result of the Debtor's use thereof – the Agent on behalf of the Senior Lenders shall be and hereby is granted (effective upon the Petition Date and without the necessity of the execution or filing by the Debtors or the Agent of mortgages, security agreements, pledge agreements, or financing

statement), valid and perfected replacement security interests in, and liens upon, all of the Debtors' right, title and interest in, to, and under (a) all assets in which the Agent for the Senior Lenders held a validly perfected lien as of the Petition Date (the "Pre-Petition Collateral"), and (b) all property acquired by the Debtors after the Petition Date that is of the exact nature, kind or character as the Prepetition Collateral. The replacement liens granted to the Agent on behalf of the Senior Lenders shall be subject and subordinate to prior perfected and unavoidable liens and security interests in property of the Debtors existing as of the Petition Date

3.    As additional adequate protection to the Agent and the Senior Lenders, the Debtors shall make the payments to the Agent as set forth in the Interim Budget (a) in the form of an interest payment of $570,000 on December 3, 2010; and (b) in the form of a Loan Paydown in the amount of $500,000 on each of November 26, December 3 and December 10, 2010.

4.    Notwithstanding the foregoing, the Debtors shall not grant the Agent and the Senior Lenders liens in avoidance actions under chapter 5 of the Bankruptcy Code or the proceeds thereof.

5.    The Debtors will furnish or make reasonably available to the Agent and the Senior Lenders, on reasonable notice and subject to reasonable confidentiality restrictions, any and all information in the Debtors' possession or within the Debtors' control relating to projected revenues and expenses, actual revenue and expenses, variances from the Interim Budget and store closings.

6.    The Debtors shall allow the Agent to send representatives to the Debtors' premises on reasonable notice during normal business hours to conduct a reasonable review of the Debtors' books and records and inspection of the Prepetition Collateral. When available, the Debtors shall deliver to the Agent operating reports that reflect revenues as well as expenditures

of the Debtors' funds during the preceding month and, when available, such other financial reports and information as are required by the United States Trustee or reasonably requested by the Agent.

7.     The entry of this Interim Order shall not prejudice or limit the rights of the Agent, the Senior Lenders or any other party in interest to seek additional relief with respect to use of Cash Collateral or for adequate protection. This Interim Order shall not limit or otherwise alter the rights of the Debtors or other parties in interest, except to the limited extent specifically provided for herein.

SIGNED THIS 22nd day of November, 2010.

_____
Jeff Bohm
United States Bankruptcy Judge

Lack's Stx
Cash flow.

($ in Thousands)

| Week Ending | Forecast 1 11/19 | Forecast 2 11/26 | Forecast 3 12/3 | Forecast 4 12/10 | Forecast 5 12/17 | Forecast 6 12/24 | Forecast 7 12/31 | Forecast 8 1/7 | Forecast 9 1/14 | Forecast 10 1/21 | Forecast 11 1/28 | Forecast 12 2/4 | Forecast 13 2/11 | 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 764 | 1,183 | 1,847 | 2,054 | 4,996 | 7,261 | 8,417 | 9,629 | 12,234 | 13,444 | 13,806 | 14,339 | 12,472 | 764 |
| **Receipts** | | | | | | | | | | | | | | |
| Installment Receivables (a) | 1,433 | 634 | 1,161 | 1,074 | 1,998 | 971 | 1,144 | 2,448 | 2,044 | 1,569 | 1,380 | 2,259 | 2,183 | 20,299 |
| Cash Sales | 388 | 1,410 | 1,519 | 1,519 | 1,292 | 1,085 | 1,075 | 967 | 759 | 558 | 325 | - | - | 10,898 |
| Credit Card Sales | 548 | 1,495 | 2,149 | 2,149 | 1,828 | 1,535 | 1,521 | 1,367 | 1,074 | 790 | 460 | - | - | 14,917 |
| Other Receipts | - | 418 | - | - | - | - | 418 | - | - | - | 392 | - | - | 1,228 |
| Customer Deposits | - | (433) | (217) | (217) | (217) | (217) | - | - | - | - | - | - | - | (1,300) |
| Total | 2,369 | 3,524 | 4,613 | 4,526 | 4,901 | 3,374 | 4,158 | 4,782 | 3,878 | 2,917 | 2,557 | 2,259 | 2,183 | 46,041 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Merchandise Vendors | - | 500 | 500 | 500 | 500 | - | - | - | - | - | - | - | - | 2,000 |
| Insurance | | | | | | | | | | | | | | |
|   Medical & Dental | 50 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 950 |
|   Property and General Liability | 67 | - | - | - | - | 67 | - | - | - | 67 | - | - | - | 202 |
| Equipment Lease Payments | 19 | 23 | 133 | 20 | 19 | 23 | 35 | 99 | - | - | 6 | 98 | 1 | 475 |
| Marketing/Advertising | - | 481 | 473 | 170 | 148 | 167 | 141 | 151 | 57 | - | - | - | - | 1,788 |
| Payroll & Benefits | 1,203 | - | 1,212 | - | 1,185 | - | 1,247 | - | 1,457 | - | 1,101 | - | 612 | 8,017 |
| Commissions | - | 155 | - | - | - | 122 | - | - | - | - | 98 | - | - | 375 |
| Property Maintenance | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 5 | 5 | 318 |
| Property Taxes | - | - | - | - | - | - | - | - | - | - | - | 1,600 | - | 1,600 |
| Rent | - | - | 452 | - | - | - | - | 452 | - | - | - | 187 | - | 1,092 |
| Sales Tax | - | 917 | - | - | - | 965 | - | - | - | 1,678 | - | - | - | 3,561 |
| Utilities | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 780 |
| Credit Card Fees | - | - | - | 110 | - | - | - | - | 281 | - | - | 38 | - | 429 |
| Other | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 60 | 60 | 1,445 |
| Subtotal | 1,548 | 2,360 | 3,054 | 1,083 | 2,136 | 1,628 | 1,706 | 986 | 2,078 | 2,029 | 1,489 | 2,085 | 852 | 23,032 |
| Operating Cash Flow | 821 | 1,164 | 1,559 | 3,442 | 2,765 | 1,747 | 2,452 | 3,796 | 1,800 | 888 | 1,069 | 175 | 1,331 | 23,010 |
| **Financing Disbursements** | | | | | | | | | | | | | | |
| Interest Payments | - | - | 612 | - | - | - | - | 602 | - | - | - | 588 | - | 1,802 |
| Subtotal | - | - | 612 | - | - | - | - | 602 | - | - | - | 588 | - | 1,802 |
| **Bankruptcy Related Disbursements** | | | | | | | | | | | | | | |
| Professional Fees | - | - | - | - | - | - | 650 | - | - | - | 20 | 650 | - | 1,320 |
| Liquidation Costs | 402 | 0 | 0 | 0 | 0 | 90 | 90 | 90 | 89 | 27 | 16 | 303 | - | 1,109 |
| Pre-Petition Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Cure Payments & Deposits | - | - | 240 | - | - | - | - | - | - | - | - | - | - | 240 |
| Subtotal | 402 | 0 | 240 | 0 | 0 | 90 | 740 | 90 | 89 | 27 | 36 | 953 | - | 2,669 |
| Net Cash Flow | 420 | 1,164 | 707 | 3,442 | 2,765 | 1,656 | 1,712 | 3,104 | 1,711 | 861 | 1,033 | (1,367) | 1,331 | 18,539 |
| Loan Paydown | - | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (6,000) |
| Ending Cash Balance | 1,183 | 1,847 | 2,054 | 4,996 | 7,261 | 8,417 | 9,629 | 12,234 | 13,444 | 13,806 | 14,339 | 12,472 | 13,303 | 13,303 |
| | | | | | | | | | | | | | | |
| Receivables Balance (a) | 132,453 | 131,820 | 130,658 | 129,584 | 127,586 | 126,615 | 125,471 | 123,023 | 120,979 | 119,410 | 118,030 | 115,771 | 113,588 | |
| Inventory Balance | 19,475 | 17,137 | 14,580 | 12,024 | 9,924 | 7,741 | 5,578 | 3,633 | 2,104 | 981 | 326 | 326 | 326 | |
| Prepetition Loan | 87,002 | 86,502 | 86,002 | 85,502 | 85,002 | 84,502 | 84,002 | 83,502 | 83,002 | 82,502 | 82,002 | 81,502 | 81,002 | |

(a) Historical collection rate of accounts receivables approximates 95%, for purposes of this presentation 75% has been assumed
(b) Based on prior appraisals conducted on behalf of lenders, the equity value of real estate ranges between $15.8 million and $23.7 million and has not been included in this presentation

EXHIBIT A