IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-60149 |
| LACK'S STORES, INCORPORATED, | § | |
| ET AL.,[1] | § | (CHAPTER 11) |
| | § | |
| DEBTOR. | § | (Jointly Administered) |
| | § | |

MOTION OF THE WILKERSON ENTITIES
(A) TO COMPEL TIMELY PERFORMANCE OF POST-PETITION
LEASE OBLIGATIONS PURSUANT TO 11 U.S.C. § 365(D)(3)
OR, (B) IN THE ALTERNATIVE, FOR THE ALLOWANCE OF
ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO 11 U.S.C. § 503(B)(1)

**MOVANTS INTEND TO REQUEST A HEARING ON THIS MATTER ON JANUARY 19, 2011 AT 2:30 P.M. AT THE UNITED STATES COURTHOUSE, COURTROOM 600, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

**IF YOU OBJECT TO THE RELIEF REQUESTED IN THE MOTION, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

Now come John G. Wilkerson, Jr. ("Wilkerson"), 4800 Franklin Avenue, LLC ("4800 Franklin"), the Gordon Mark Wilkerson 1991 Trust, the David Collins Wilkerson 1991 Trust, the Sarah Ruth Wilkerson 1991 Trust and the Ray Hankins Wilkerson 1991 Trust (collectively, with

---

[1] The Debtors include Lack's Stores, Incorporated ("Lack's Stores"), Merchandise Acceptance Corporation, Lack's Furniture Centers, Inc., and Lack Properties, Inc. ("Lack Properties").

Wilkerson and 4800 Franklin, the "Wilkerson Entities"), who file this *Motion of the Wilkerson Entities (a) to Compel Timely performance of Post-petition Lease Obligations Pursuant to 11 U.S.C. § 365(d)(3) or, (b) in the Alternative, for the Allowance of Administrative Expense Claims Pursuant to 11 U.S.C. § 503(b)(1)* (the "Motion"), seeking to compel timely performance of the tenants' obligations under the Leases (defined below) pursuant to section 365(d)(3) of the Bankruptcy Code.[2] In the alternative, the Wilkerson Entities request an order allowing administrative expense claims pursuant to section 503(b)(1) for the actual and necessary benefit conferred on the Debtors by their occupancy of the Properties (defined herein) during the liquidation sales. In support of this Motion, the Wilkerson Entities respectfully represent the following:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over the above referenced, jointly-administered chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. The relief requested herein concerns administration of the Debtors' estates, which constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1408.

## II. FACTS

2. The Debtors commenced these jointly-administered chapter 11 cases on November 16, 2010 (the "Petition Date"). On the Petition Date, the Debtors filed a motion requesting authority to conduct liquidation sales,[3] which this Court has granted.

---

[2] *See* 11 U.S.C. §§ 101-1532 (2010).
[3] *See Debtors' Emergency (I) Motion for Authority to (A) Conduct Store Closing Sales and (B) Assume Consulting Agreement and (II) Application for Order Authorizing Retention of A Joint Venture Comprised of Hilco Merchant Resources, LLC and SB Capital Group, LLC as Consultant to the Debtors* [Doc. No. 12] (the "GOB Motion").

3. Prior to the Petition Date, Debtor Lack's Stores executed three separate but substantially similar leases (the "Leases") for the use and occupancy of three properties listed in the Debtors' materials as Store Numbers 137, 144 and 148 (collectively, the "Properties"). The Leases were unexpired as of the Petition Date, and the Debtors have continued to occupy and use the Properties to conduct their liquidation sales.

4. The Leases require Debtor Lack Properties, as the tenant, to pay monthly base rents as well as additional rents, including certain taxes discussed below. Specifically, all of the Leases contain the following relevant terms:

> Taxes and Assessments: From and after the Commencement Date, Tenant shall pay all real estate taxes (both general and special), assessments and other governmental impositions lawfully created and assessed against the Leased Premises during the term hereof. The taxes, assessments and impositions to which this Section 6.01 refers shall include, but not be limited to, any and all sales taxes, gross receipts tax, use tax, excise tax or other similar tax imposed or levied against rentals or any other charge or payment required under this Lease to be made by Tenant which has been imposed or levied on or against the same by any governmental agency having, or purporting to have, jurisdiction thereover.[4]

5. The Leases further provide:

> Additional Rent. All sums of whatever character due from Tenant to Landlord or otherwise payable by Tenant under the terms of this Lease shall be deemed to constitute rent. If such amounts are not paid at the time provided in this Leases, they shall nevertheless be collectible as rent with the next installment of minimum rent thereafter falling due, but nothing herein contained shall be deemed to suspend or delay payment of any amount of money or charge at the time the same becomes due and payable hereunder or to limit any other remedy of Landlord. All amounts of rent

---

[4] Lease at ¶ 6.01.

payable in a given month shall be deemed to comprise a single rental obligation of Tenant to Landlord.[5]

6. Prior to the Petition Date, the Wilkerson Entities received invoices for the 2010 real property taxes. On information and belief, the Debtors are obligated under the Leases to pay such real property taxes (collectively, the "Real Property Taxes") as follows:

    (a) Store No. 137, at 5471 50th Street in Lubbock, TX: $72,457.94;[6]

    (b) Store No. 144, at 4800 Franklin Avenue in Waco, TX: $6,716.26;[7] and

    (c) Store No. 148, at 18603 Blanco Rd. in San Antonio, TX: $114,658.57.

7. The Debtors did not pay the Real Property Taxes prior to the Petition Date.

8. The Debtors have made no attempts to pay any portion of the Real Property Taxes since the Petition Date. On information and belief, the Debtors have structured their liquidation sales to allow them to complete the sales, vacate stores and reject leases before February 1, 2011, when the Real Property Taxes become delinquent under Texas law.

### III. RELIEF REQUESTED

9. By this Motion, the Wilkerson Entities seek an order compelling payment of the Real Property Taxes and any other such obligations constituting "Additional Rents" required under the Leases. In the alternative, if this Court concludes that such obligations cannot be compelled under section 365(d)(3) of the Bankruptcy Code, the Wilkerson Entities seek the allowance and payment of administrative expense claims pursuant to section 503(b)(1) for the actual and necessary benefit conferred on the Debtors by their use and occupancy of the

---

[5] Lease at ¶ 4.02.
[6] This amount accounts for 100% of invoice R121146 (70,541.89), and 50% of invoice R150581 ($1,916.05).
[7] This assessment reflects the mid-year acquisition of the property by 4800 Franklin.

Properties from the Petition Date until the date when such Properties are vacated and the Leases are rejected.

### IV. ARGUMENTS AND AUTHORITY

10. Section 365(d)(3) of the Bankruptcy Code provides as follows:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11. This provision was added to the Bankruptcy Code in 1984, based on perceived inequities between landlords and their bankrupt tenants. Before that time, the typical remedy for a party to an unexpired lease who is suffering economic losses as a result of a bankruptcy was to move for an order compelling the bankruptcy trustee to assume or reject the lease within a certain time period pursuant to section 365(d)(2) of the Bankruptcy Code. *See Memphis-Shelby Counts v. Braniff Airways, Inc.,* 783 F.2d 1283, 1285 (5th Cir. 1986). "Rather than forcing the landlord to take the initiative, apply for, and wait for an administrative expense allowance, as it was required to do before 1984, Congress intended § 365(d)(3) to shift the burden of indecision to the debtor: the debtor must now continue to perform all the obligations of its lease or make up its mind to reject it before some onerous payment comes due during the prerejection period.

That is a sensible adjustment of this particular debtor-creditor relationship." *In re Krystal Co.,* 194 B.R. 161, 164 (Bankr. E.D. Tenn. 1996).

12. Since the addition of section 365(d)(3) to the Bankruptcy Code in 1984, courts have divided on whether that provision requires full or partial payment of the post-petition obligations. In recent years, the weight of authority has tipped in favor of the stricter "billing date" approach, which requires a debtor to pay the full amount of any obligation which becomes legally enforceable after the petition date but before the rejection date. *See*, *e.g., In re Appletree Markets*, 139 B.R. 417, 420 (Bankr. S.D. Tex. 1992) (Greendyke, J.); *In FFP Operating Ptrs., L.P.,* 2004 Bankr. LEXIS 884 at *17-18, Bankr. Case No. 03-90171-bjh-11 (Bankr. N.D. Tex. June 16, 2004) (Houser, J.); *In re Amber's Stores, Inc.,* 193 B.R. 819, 823-25 (Bankr. N.D. Tex. 1996) (Abramson, J.); *In re Montgomery Ward Holdings Corp.,* 268 at 207; *In re Koenig Sporting Goods, Inc.,* 203 F.3d at 989; *In re R.H. Macy,* 152 B.R. 869, 873 (Bankr. S.D.N.Y. 1993). Notably, those courts distinguish between a "claim" and an "obligation," and generally find that an obligation arises when the debtor becomes contractually or statutorily bound, regardless of when a tax assessment occurs or when payment is actually due. *See, e.g., In re R.H. Macy,* 152 B.R. at 873.

13. A smaller number of courts have found the "proration" or "accrual" approach to be the more equitable approach that avoids potentially absurd results that may occur from an application of the "billing date" approach. *See, e.g., Schneider & Reiff v. William Schneider, Inc. (In re William Schneider, Inc.),* 175 B.R. 769 (S.D. Fla. 1994); *Child World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.),* 161 B.R. 571 (S.D.N.Y. 1993); *In re All For A Dollar, Inc.,* 174 B.R. 358 (Bankr. D. Mass. 1994); *In re Almac's, Inc.,* 167 B.R. 4

(Bankr. D. R.I. 1994); *In re Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125, 1127 (7th Cir. 1998) (Posner, J.) ("But since death and taxes are inevitable and Handy Andy's obligation under the lease to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994 and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force."); *but see Ha-Lo Indus. v. CenterPoint Props. Trust,* 342 F.3d 794, 798-801 (7th Cir. 2003) (adopting the "billing date" approach and limiting *Handy Andy* to its facts and the particular lease at issue in that case).

14.     While the Fifth Circuit has not opined on this issue to date, the weight of authority would support an application of the "billing date" approach. Under this approach, the Debtors must pay all obligations that arise under the lease after the Petition Date but before the effective date of a lease rejection.

15.     "Under Texas law, a property owner's liability for ad valorem taxes for any given year arises as of January 1 of that year regardless of when the tax is assessed." *Midland Cent. Appraisal Dist. v. Midland Indus. Servs. Corp. (In re Midland Indus. Servs. Corp.),* 35 F.3d 164, 167 (5th Cir. 1994) (citing Tex. Tax Code § 32.001); *see also* Tex. Tax Code § 32.07. While taxes are not delinquent until February 1st of the following year, the property owner incurs the liability on January 1st of the tax year. Tex. Tax Code § 32.01; *see also In re BH S&B Holdings, LLC,* 435 B.R. 153, 161-62 n.8 (Bankr. S.D.N.Y. 2010) (discussing *ad valorem* tax liability under Texas law). While the Wilkerson Entities incurred the liability for *ad valorem* property taxes on January 1, 2010, property taxes can only be estimated until the tax rolls are issued and the taxing authorities mail the bills for the Properties. *See id.* Property taxes are legally due upon receipt of the tax bill. *See* Tex. Tax Code § 31.02(a). Thus, the Wilkerson Entities became

*statutorily* obligated to pay the Real Property Taxes on January 1, 2010, though they could not have known the actual amounts to be paid, and such amounts were not due until the Wilkerson Entities received the tax bills from the applicable taxing authorities.

16.     While this analysis under the Texas Tax Code is instructive, it does not determine the Debtors' *contractual* obligations for purposes of section 365(d)(3) of the Bankruptcy Code. To make that determination, courts uniformly look to the terms of the leases.  *See id.*; *see also Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.),* 203 F.3d 986, 989 (6th Cir. 1996); *Child World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571, 575 (S.D.N.Y. 1993); *Centerpoint Properties v. Montgomery Ward Holdings Corp. (In re Montgomery Ward Holdings Corp.),* 268 F.3d 205, 207 (3d Cir. 2001) (noting that the obligation to reimburse the landlord for taxes arose upon the tenant's receipt of an invoice from the landlord, even if the taxes assessed may not become due and payable until after the end of the lease term); *HA-LO Indus. v. CenterPoint Props. Trust,* 342 F.3d 794, 798 (7th Cir. 2003) ("HA-LO's obligation to pay its rent to CenterPoint is governed by § 365(d)(3) of the Bankruptcy Code and the terms of the parties' lease.").

17.     Lack's Stores became *contractually* obligated to pay such taxes when they were assessed and billed to the Debtors.  As noted above, the Leases require the Debtors to pay "all real estate taxes (both general and special), assessments and other governmental impositions lawfully created and assessed against the Leased Premises during the term hereof."  *See* Lease, ¶ 6.01.  "If such amounts are not paid at the time provided in this Leases, they shall nevertheless be collectible as rent with the next installment of minimum rent thereafter falling due . . . ."  *Id.* ¶ 4.02.

18. The Wilkerson Entities received the tax bills in late September and early October. No later than December 21, 2010, the Wilkerson Entities notified the Debtors of the Real Property Taxes and requested payment of the same. The Debtors have not tendered payment of such Real Property Taxes. According to the Leases, such obligations are "collectible as rent with the next installment." *See id.* Thus, the obligations to pay the Real Property Taxes constitute obligations arising from and after the Petition Date and before the rejection of the Leases. As such, the Court should compel timely performance of all obligations under the Leases, including the payment of the Real Property Taxes on or before January 1, 2011, which is the next monthly installment.

19. In the alternative, if the Court declines to compel payment of Real Property Taxes, there is authority to allow an administrative expense claim for such amounts as "actual and necessary" costs of preserving the estate. *See In re Goody's Family Clothing Inc.,* 610 F.3d 812, 817 (3rd Cir. 2010). In *Goody's Family Clothing*, the Third Circuit expanded on its prior holding in *Montgomery Ward* to explain that payment of "stub rents"—i.e., the rents due before the petition date but covering some period after the commencement of the cases—may not be compelled under section 365(d)(3), but may be allowed as an administrative expense under section 503(b)(1). Said the Court of Appeals:

> Relieving a landlord under § 365(d)(3) of burdensome administrative procedures, however, does not foreclose that landlord's ability to use the more burdensome procedures to recover in situations outside the scope of § 365(d)(3). *Put simply, § 365(d)(3) does not supplant or preempt § 503(b)(1).* The last sentence of § 365(d)(3) makes this plain: "Acceptance of any such performance [under § 365(d)(3)] does not constitute waiver or relinquishment of the lessor's rights under such lease or under [the Bankruptcy Code]." By accepting the July 1, 2008, payment from Goody's, the Landlords did not give up any other rights under the

> Bankruptcy Code, including those accorded by § 503(b)(1). Indeed, it would put lessors in an awkward place if, while debtors were required to pay them on time pursuant to § 365(d)(3), accepting such a payment served also to deprive lessors of the balance of their rights under the Code.

*Id.* (emphasis added)

20. If the Court is disinclined to grant relief under section 365(d)(3), the Wilkerson Entities request the allowance of administrative expense claims for the reasonable and necessary cost to preserve the estate. The Debtors have occupied the Leases since before the Petition Date and propose to continue such occupancy until mid-to-late January, when the Properties will be vacated and the Leases rejected. In the meantime, the Wilkerson Entities are on the hook for unpaid portions of the Real Property Taxes and other assessments that are levied against the Properties as the result of the Debtors' occupancy. Such expenses are the reasonable and actual costs of occupancy in the Properties. As did the debtors in *Goody's Family Clothing*, the Debtors here have benefitted from their post-petition occupancy of the Properties which allowed the Debtors to conduct the store closing sales in an efficient manner. *See Al Copeland Enters., Inc. v. State of Tex. (In re Al Copeland Enters, Inc.),* 991 F.2d 233, 238-40 (5th Cir. 1993) (citing *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968)); *see also Toma Steel Supply, Inc. v. TransAmerican Nat. Gas Corp. (In re TransAmerican Nat. Gas Corp.),* 978 F.2d 1409, 1420 (5th Cir. 1992) ("Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the *estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual*.") (emphasis added) (citing *In re Coastal Carriers Corp.,* 128 B.R. 400, 404 (Bankr. D. Md. 1991)).

21. Accordingly, the Court should allow and compel payment of the Wilkerson Entities' administrative expense claims for the actual and necessary costs of such occupancy, which includes the unpaid post-petition portions of the 2010 Real Property Taxes, the pre-rejection portions of the 2011 real property taxes, any other taxes assessed or levied upon the property and any other damages caused to the Wilkerson Entities from the Debtors' post-petition occupancy.

## V.  PRAYER

WHEREFORE, for the reasons stated herein, the Wilkerson Entities respectfully request that the Court: (i) enter an order compelling the Debtors to perform all obligations due under the Leases, including without limitation, the payment of the Real Property Taxes; (ii) enter an order in the alternative allowing the Wilkerson Entities administrative expense claims and compelling payment for the actual and necessary benefit conferred on the Debtors for their use and occupancy of the Properties; and (iii) grant such other and further relief as may be just and proper.

Dated:  December 30, 2010            Respectfully submitted,

**COX SMITH MATTHEWS INCORPORATED**

By:  /s/ Mark E. Andrews
     Mark E. Andrews
     State Bar No. 01253520
     Aaron M. Kaufman
     State Bar No. 24060067
     1201 Elm Street, Suite 3300
     Dallas, Texas  75270
     (214) 698-7800
     (214) 698-7899 (Fax)

**ATTORNEYS FOR THE WILKERSON ENTITIES**