IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 10-60149 |
| LACK'S STORES, INCORPORATED, *ET AL.,*[1] | § § § | (Chapter 11) (Jointly Administered) |
| DEBTORS. | § § § § § § § § | Hearing Date (Sale Procedures): January 12, 2011, at 2:30 p.m.  Objection Deadline (Sale Procedures): January 7, 2011; 5:00 p.m. |

**DEBTORS' EXPEDITED MOTION TO APPROVE PROCEDURES AND BID PROTECTIONS FOR THE SALES AND ASSIGNMENTS OF REAL PROPERTY LEASES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS
(REAL PROPERTY LEASES)**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 12, 2011 AT 2:30 P.M. PREVAILING CENTRAL TIME AT THE UNITED STATES COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS, 77002.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT ON OR BEFORE JANUARY 7, 2011 AT 5:00 P.M. PREVAILING CENTRAL TIME. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] The Debtors and the last four digits of their tax identification numbers are Lack's Stores, Incorporated (6528), Merchandise Acceptance Corporation (0972), Lack's Furniture Centers, Inc. (9468), and Lack Properties, Inc. (8961).

Lack's Stores, Incorporated and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors"), file this *Debtors' Expedited Motion to Approve Procedures and Bid Protections for the Sales and Assignments of Real Property Leases Free and Clear of Liens, Claims, Encumbrances, and Other Interests (Real Property Leases)* (the "Motion"). In support of the Motion, the Debtors respectfully show the Court as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estates and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On November 16, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-referenced cases (collectively, the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. The United States Trustee appointed the Official Committee of Unsecured Creditors ("Committee") on November 30, 2010 [Docket No. 96].

## STATEMENT OF FACTS

**A.    The Debtors and Their Businesses**

6. Lack's Stores, Incorporated ("Lack's") is a Texas corporation with its headquarters located in Victoria, Texas. As of the Petition Date, it was one of the largest independently-owned retail furniture chains in the United States, operating thirty-six retail home

furnishing stores in twenty-six Texas cities.[2] Lack's operates under the trade names "Lack's" and "Lack's Home Furnishings" and sells a complete line of furnishings for the home, including furniture, bedding, major appliances, and home electronics.

7. Lack Properties, Inc. ("Lack Properties"), a wholly-owned subsidiary of Lack's, is the owner of the real property and improvements associated with approximately fourteen store, distribution center, and warehouse locations that are leased to Lack's.[3] The remaining store locations are leased by Lack's from third party landlords, including locations that are leased from landlords that are affiliated with various members of the Lack family.

8. Lack's is the borrower under that certain Second Amended and Restated Loan and Security Agreement dated as of July 10, 2007 (as amended from time to time, the "Senior Credit Agreement") among Lack's, The CIT Group / Business Credit, Inc., as agent (in such capacity, the "Agent"), and the other lenders from time to time party thereto (together with the Agent, the "Senior Lenders").[4] As of the Petition Date, the aggregate principal amount of the advances outstanding under the Senior Credit Agreement was approximately $86,000,000. The Senior Lenders allege that the obligations under the Senior Credit Agreement are secured by a lien on substantially all of the Debtors' assets excluding certain real estate.

9. During these Cases, the Debtors intend to (a) liquidate their inventory and reduce costs of operations through "Store Closing Sales" which have been approved by the Court, and (b) propose a chapter 11 plan that will provide for the collection of Lack's customer notes

---

[2] Lack's retail stores are located in Abilene, Alice, Austin (3), Bay City, Beeville, College Station, Corpus Christi (2), Del Rio, El Campo, Killeen, Longview, Lubbock (2), Lufkin, Midland, New Braunfels, Odessa, Port Lavaca, Portland, San Angelo, San Antonio (5), Sinton, Temple, Tyler, Uvalde, Victoria (2), and Waco.

[3] Merchandise Acceptance Corporation and Lack's Furniture Centers, Inc. are also wholly owned subsidiaries of Lack's, each of which own limited or no assets and have no operations.

[4] The current Senior Lenders include The CIT Group / Business Credit, Inc.; U.S. Bank National Association; PNC Bank, National Association; Capital One Leverage Finance Corp.; and JPMorgan Chase Bank, N.A.

receivable portfolio in the ordinary course of business and the marketing and disposition of the Debtors' real estate interests over time and in such a manner as to maximize their value for the benefit of the estates. The Debtors anticipate that the orderly liquidation of their inventory and fixtures, ordinary course collection of customer notes receivable, and the marketing and disposition of real property interests and other assets will generate the proceeds necessary to satisfy in full the claims of the Senior Lenders under the Senior Credit Agreement and likely the claims of all other creditors with a return available to the equity holders.[5]

**B.      Sales and Assignment of Real Property Leases**

10.     Lack's is the lessee under unexpired leases of non-residential real property (the "Real Property Leases"), which are described in the list attached hereto as **Exhibit "A."**

11.     The Debtors have engaged DJM Realty Services, LLC ("DJM") to assist them in the disposition of the Real Property Leases, and the Court has entered its *Order Granting Debtors' Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) for Authority to Employ and Retain DJM Realty Services, LLC as Real Estate Consultant and Advisor* [Docket No. 215] in which it approved such engagement. DJM has already expended significant effort marketing the Real Property Leases.

## RELIEF REQUESTED

**A.      Introduction**

12.     Pursuant to Bankruptcy Code §§ 105(a), 363, and 365, the Debtors seek, among other things, (a) authority to sell and assign the Real Property Leases free and clear of liens, claims, encumbrances, and other interests; (b) a waiver of the fourteen-day stay imposed under

---

[5] For a more complete description of the background of the Debtors, please see the *Declaration of Melvin Lack in Support of First Day Pleadings* [Docket No. 14] filed in these Cases.

Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"); (c) approval of proposed sale procedures and bidding protections, substantially in the form attached hereto as **Exhibit "B"** (as may be modified as set forth therein, the "Sale Procedures"); and (d) approval of a proposed notice of the respective dates, times, and places for an auction (if applicable), cure amounts (if applicable), and hearing to approve the proposed sale and assignment (the "Sale Notice"), substantially in the form attached hereto as **Exhibit "C."**

13. Given (a) the existence of multiple Real Property Leases; (b) the time and expense that would be associated with preparing, negotiating, and filing separate sale motions and sale procedures motions; and (c) the fact that the Debtors expect many of the assignments of Real Property Leases to involve a modest amount of cash, it is appropriate to approve a process by which proposed sales and assignments of the Real Property Leases can be approved on notice and after a hearing on the terms set forth herein. It is further appropriate to establish uniform notices and Sale Procedures (including optional awards of expense reimbursements) relating to the sales and assignments of Real Property Leases. The requested process and Sale Procedures are set forth below.

14. Specifically, the Debtors propose that they will continue to market the Real Property Leases with the assistance of DJM. Upon the receipt of an acceptable bid, the Debtors will proceed with the negotiation and execution of an Assignment Agreement (an "Assignment Agreement"). Upon execution by the bidder, the Assignment Agreement will be fully binding upon the bidder, subject only to Court approval and higher and better offers. The Debtors will then file a Sale Notice, which advises parties in interest of: (a) the Debtors' intention to proceed with the sale and assignment of the applicable Real Property Leases to the purchaser identified in the Sale Notice and on the terms set forth in the Assignment Agreement (which will be available

on a website to be identified on the Sale Notice); (b) whether the Debtors intend to conduct a bid process and auction with respect to the applicable Real Property Leases; (c) the bid deadline and auction date (if applicable) and hearing date with respect to the proposed sale and assignment of the applicable Real Property Leases; and (d) the amount the Debtors believe is necessary to cure any defaults outstanding under the Real Property Leases. The Debtors will serve that Sale Notice on the applicable landlord(s), any persons that assert liens on Lack's interest in the applicable Real Property Leases, any persons identified on the Debtors' master service list, and any other persons identified in subpart 2.C.i. of the Complex Rules Exhibit C (collectively, the "Notice Parties").

15. If the Debtors believe that it is appropriate to auction the applicable Real Property Leases, the Debtors request authority to (a) award an expense reimbursement not to exceed $5,000 to reimburse the stalking-horse bidder for actual, reasonable, and documented (in writing) out-of-pocket expenses *in an amount to be subsequently approved by the Court* (in the event that the stalking-horse bidder is not the successful bidder); and (b) set a bid deadline of three business days prior to the auction date. Consistent with this Court's *Memorandum Opinion Denying Vopak North America, Inc.'s Request to Reopen Auction to Allow Higher Bids to Be Submitted* [Case No. 09-38188; Docket No. 696], the Debtors propose that the auction be held in open Court at the same time as, or immediately before, the assignment hearing, unless the Debtors determine that an out-of-court auction is appropriate under the circumstances of a particular bid. The Debtors further propose that they be permitted to set the assignment hearing on the applicable sale and assignment of Real Property Leases any time after eight (8) days after the Sale Notice is served. At the assignment hearing, the Court would consider, among other things, the approval of the applicable Assignment Agreement, the sale and assignment of the

applicable Real Property Leases free and clear of all liens, claims, encumbrances, and other interests, and the good faith of the purchaser of the Real Property Leases.

## B.  Assumption and Assignment of Real Property Leases

16.  At the respective assignment hearings, the Debtors will seek authority to assume and assign the Real Property Leases,[6] and they will demonstrate that the proposed assignee of such Real Property Leases provides adequate assurance of future performance and that the Debtors have proposed adequate cure amounts.

17.  A debtor in possession may assign an executory contract and unexpired lease only if it first assumes that contract or lease.  11 U.S.C. § 365(f)(2).  Bankruptcy Code § 365(a) provides a debtor in possession authority to assume an executory contract or unexpired lease under certain circumstances: "[T]he trustee, subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).

18.  Bankruptcy Code § 365(b)(1) further states:

(b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A)  cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .;

(B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

---

[6] To the extent that a party interested in purchasing a Real Property Lease is not found in a timely manner, the Debtors may seek authority to reject such Real Property Lease or allow such Real Property Lease to be rejected by operation of the Bankruptcy Code.

19. Bankruptcy Code § 365 does not provide a standard for determining when a debtor in possession can assume an unexpired lease. Courts have held that "the act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services." *See MMR Holding Corp. v. C & C Consultants, Inc. (In re MMR Holding Corp.)*, 203 B.R. 605, 612 (Bankr. M.D. La. 1996). To assess whether the unexpired agreement is beneficial to the estate, the debtor in possession must "take full account" of the cost incurred to cure the existing defaults. *See Century Indemnity Co. v. NGC Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 506 (5th Cir. 2000) (citing *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 849 (4th Cir. 1999)).

20. The assignment of the Real Property Leases will be beneficial to the Debtors' estates. At the conclusion of the store closing sales, Lack's will not need the Real Property Leases to continue its operations. In addition to avoiding the incurrence of costs associated with rent payments, utilities, insurance, taxes, and maintenance and to receiving consideration for the assignment, by assigning the Real Property Leases, the Debtors will be able to avoid potential lease rejection damage claims that might otherwise be asserted against the Debtors' estates. Further, the Debtors anticipate that the proposed assignees of the Real Property Leases will be responsible for the cure of any defaults.

21. A debtor in possession may assign an unexpired lease under Bankruptcy Code § 365(f)(2) only if:

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

  (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

  22.  At the assignment hearing, the Debtors will demonstrate that the proposed assignee of the applicable Real Property Lease provides the applicable landlord adequate assurance of future performance. The Court in *In re Texas Health Enterprises, Inc.* stated, "Adequate assurance of future performance 'is to be given a practical, pragmatic construction based upon . . . the circumstances of [the] case.'" 246 B.R. 832, 834 (Bankr. E.D. Tex. 2000) (quoting *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994)). The *Texas Health* court continued, "Assurance of future performance is adequate if performance is likely (i.e. more probable than not) and the degree of assurance necessary to be deemed adequate 'falls considerably short of an absolute guaranty.'" *Id.* (citing *In re PRK Enterprises, Inc.*, 235 B.R. 597, 603 (Bankr. S.D. Tex. 1999)) (internal citations omitted).

  23.  Importantly, pursuant to the Sale Procedures, a person will only be able to participate in an auction for one or more of the Real Property Leases if it demonstrates to the Debtors' satisfaction evidence of committed financing or other ability to perform the transaction and provides an earnest money deposit. Under these circumstances, the risk of inadequacy of the assurance of future performance is much less.

  24.  For these reasons, at the assignment hearings, the Court should approve the sale and assignment of the Real Property Leases on the terms set forth in the Assignment Agreements.

C.  **Satisfaction of Bankruptcy Code § 363**

25. The assignment of an unexpired lease of non-residential real property is both an assignment pursuant to Bankruptcy Code § 365 and a sale pursuant to Bankruptcy Code § 363(b)(1). Bankruptcy Code § 363(b)(1) provides, "The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "A sale of assets under § 363, as implemented by rule 6004, requires notice and a hearing and is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons." *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010).

26. At the respective assignment hearings, the Debtors will demonstrate that they have exercised their sound business judgment to sell and assign the applicable Real Property Leases. The Debtors are currently conducting store closing sales, which are anticipated to conclude in mid-January, 2011. Once the liquidation of the inventory in the stores has concluded, the Debtors will no longer have a need for the Real Property Leases. By selling the Real Property Leases, the Debtors will avoid the needless incurrence of expenses relating to, among other things, on going rent and other expenses for the Real Property Leases.

27. For these reasons, at the assignment hearings, the Court should approve the sales and assignments of the Real Property Leases on the terms set forth in the applicable Assignment Agreement.

D.  **Sale and Assignment of the Real Property Leases Free and Clear of All Liens, Claims, Encumbrances, and Other Interests.**

28. Bankruptcy Code § 363(f) provides:

(f) The trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate only if –

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater that the aggregate value of all liens on such property;
>
> (4) such interest is a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f). These five conditions are written in the disjunctive, permitting the sale of estate assets upon the satisfaction of any one of the five conditions, including consent of the lienholders. *See In re Taxi Holders, Inc.*, 307 B.R. 525, 528-529 (Bankr. E.D. Va. 2004); *see also In re Mirant Corp.*, 2005 WL 1000266, at *5 (N.D. Tex. Apr. 14, 2005) (noting that "one or more of the standards set forth in Section 363(f)" must be satisfied). At each assignment hearing, the Debtors will demonstrate that at least one of these criteria is satisfied. With respect to each sale, the Debtors will inquire whether any holders of liens on the applicable Real Property Leases consent to the sale. Even absent consent, the Real Property Leases may be sold free and clear of its interests (with such interests attaching to the sale proceeds), provided that one of the four other conditions are satisfied, including that lien holders could be compelled to accept money satisfaction of its interests in the property.

29. Therefore, at the assignment hearings, the applicable Real Property Leases should be sold pursuant to the applicable Assignment Agreement free and clear of all liens, claims, encumbrances, or other interests with any holder's lien, claim, encumbrance, or other interest attaching to the proceeds of the sale, with the same nature, validity, and priority of that interest in the Real Property Leases prior to the proposed sale.

**E.      Good Faith Protections Pursuant to Bankruptcy Code § 363(m).**

30.     Bankruptcy Code § 363(m) provides,

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). That section "patently protects, from later modification on appeal, an authorized sale where the purchaser has acted in good faith and the sale was not stayed pending appeal." *In re Butan Valley, N.V.*, (slip op.), 2009 WL 6509349, at *4 (S.D. Tex. Sept. 11, 2009) (quoting *Matter of Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990)). Where a commercially sophisticated seller and purchaser have negotiated a sale at arms-length, they have acted in good faith within the contemplation of Bankruptcy Code § 363(m) and are entitled to the protections of that provision. *See In re Beach Dev., L.P.*, (slip op.), 2009 WL 3246771, at *3 (Bankr. S.D. Tex. Oct. 5, 2009).

31.     At each assignment hearing, the Debtors will demonstrate that (a) the Assignment Agreement was negotiated in good faith; (b) the negotiations were free of collusion among the Debtors and the prospective bidders; and (c) the procedures employed by the Debtors were fair and reasonable and produced the highest and best arm's length offer for the purchase of the applicable Real Property Leases. Further, in many cases, the purchaser would be identified as the winning bidder at an auction conducted in open court. Accordingly, the purchaser of the Real Property Leases will be a good faith purchaser within the meaning of Bankruptcy Code § 363(m) and will be fully entitled to the protections thereof.

**F.  Waiver of the Fourteen-Day Stays Imposed Under Bankruptcy Rules 6004(h) and 6006(d)**

32. To successfully implement the foregoing, the Debtors request a waiver of the fourteen-day stays of Bankruptcy Rule 6004(h) and 6006(d). Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise. FED. R. BANKR. P. 6006(d).

33. A waiver of the fourteen-day stays of Bankruptcy Rule 6004(h) and 6006(d) will allow the Debtors to immediately close sales and assignments of the Real Property Leases with the purchasers, which will result in a more immediate benefit to the Debtors' estates, which will, in turn, lessen the Debtors' accrual of administrative expenses.

**G.  Implementation of Sale Procedures**

34. The Debtors propose to use the Sale Procedures generally set forth on Exhibit B with respect to the sale and assignment of the Real Property Leases. The Sale Procedures have a number of benefits, including setting the expectations of potential purchasers and parties in interest and promoting a relatively uniform sale process. The Sale Procedures provide an appropriate framework for selling and assigning the Real Property Leases and will enable the Debtors to review, analyze, and compare all bids received to determine which bid is in the best interests of the Debtors' estates and creditors with respect to each Real Property Leases. The Sale Procedures also give the Debtors flexibility to modify the proposed procedures in

**DEBTORS' EXPEDITED MOTION TO APPROVE PROCEDURES AND BID PROTECTIONS FOR THE SALES AND ASSIGNMENTS OF REAL PROPERTY LEASES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS (REAL PROPERTY LEASES)**  **Page 13 of 17**
US 694223v.2

circumstances where the facts and circumstances warrant modification. Therefore, the Debtors respectfully request that this Court approve the Sale Procedures.

35. During the course of negotiations with a stalking-horse bidder, the Debtors may determine that it is appropriate to award a modest expense reimbursement (in the event the stalking-horse bidder is not the successful bidder) to reimburse the stalking-horse bidder for actual, reasonable, and documented out-of-pocket expenses. The expense reimbursement (not to exceed $5,000) would be an administrative expense payable upon the closing of an alternative sale of the Real Property Leases. ***In that event, the Debtors will seek subsequently Court approval of the expense reimbursement***. In the event that the approval of the expense reimbursement is sought at the assignment hearing, the Debtors set forth the legal standard in this Motion.

36. The determination of whether an expense reimbursement should be allowed is made based on whether the fees and expenses are necessary to preserve the value of a debtor's estate. *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999). The considerations that underlie a debtor's business judgment to pay an expense reimbursement are relevant to the Court's determination of the request. *Id*. Indeed, courts have evaluated expense reimbursement arrangements under the business judgment rule standard. *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422 (S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2d Cir. 1993).

37. It is well-established that "[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations." *In re Integrated Res., Inc.*, 147 B.R. at 658. Any proposed expense reimbursement will be the product

of good faith, arm's-length negotiations between the Debtors and the stalking-horse bidders. The expense reimbursements will be utilized to *reimburse* the stalking-horse bidder for actual, reasonable, and documented out-of-pocket expenses in the event that such bidder is not the successful bidder.

38. At the assignment hearings, the Debtors will demonstrate that any award of an expense reimbursements is fair and reasonable from the perspective of the time, effort, and expense that the stalking-horse bidder will incur in negotiating the Assignment Agreement, conducting due diligence, and participating in the sale process. Further, the award an expense reimbursement will have been necessary to enhance and preserve the value of the Real Property Leases for the Debtors' estates and to allow them to obtain the best stalking-horse bid possible.

H.   **Approval of the Sale Notice**

39. Under Bankruptcy Rule 2002(a) and (c) and the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Bankruptcy Cases Exhibit C Guidelines (the "Complex Rules Exhibit C"), debtors are required to notify their creditors of the proposed sale of the assets, including a disclosure of the time and place of any auction, the terms and conditions of the sale, and the deadline for filing any objections thereto. The Sale Notice contains the type of information required under Bankruptcy Rule 2002(c) and also includes information concerning the Sale Procedures and the bidding protections. This information will enable interested parties to participate in the auctions (as applicable) and assignment hearings. Accordingly, the Debtors request that this Court approve the form and content of the Sale Notice.

40. The Debtors propose to serve the Sale Notice together with the Sale Procedures on the Notice Parties within two business days after the filing of the Sale Notice, by first-class

United States mail, postage prepaid. The Debtors request to set the assignment hearing no less than eight (8) days after the filing of the Sale Notice. The Debtors submit that the Sale Notice and the method of service of the Sale Notice constitute good, proper and adequate notice of the sale of the Real Property Leases and the proceedings with respect thereto (including, but not limited to, any auction or assignment hearing). Therefore, the Debtors respectfully request that this Court approve the foregoing notice procedures.

## PRAYER

The Debtors respectfully request that the Court (a) authorize the Debtors to assume and assign the Real Property Leases; (b) approve the payments to be set forth on the Sale Notice to cure all defaults under the Real Property Leases; (c) authorize the Debtors to sell the Real Property Leases free and clear of Liens, claims, encumbrances, and other interests on the terms set forth in this Motion, (d) waive the fourteen-day stays imposed under Bankruptcy Rule 6004(h); (c) approve the Sale Procedures; (e) approve the Sale Notice and the service procedures relating to the same; and (f) grant the Debtors such other and further relief, both at law and in equity, to which the Debtors may be justly entitled.

Dated: December 31, 2010

Respectfully submitted,

**VINSON & ELKINS LLP**

By: */s/ Paul E. Heath*
Daniel C. Stewart, SBT #19206500
Paul E. Heath, SBT #093555050
Michaela C. Crocker, SBT #24031985
Richard H. London, SBT #24032678
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 214.220.7700
Fax: 214.999.7787
mcrocker@velaw.com
rlondon@velaw.com
**ATTORNEYS FOR THE DEBTORS**