UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| Lack's Stores Incorporated, et al., § | Case No. 10-60149 |
| § | (Chapter 11) |
| § | (Jointly Administered) |
| Debtors. § | |

**OBJECTION OF THE CIT GROUP/BUSINESS CREDIT, INC. TO THE MOTION OF THE WILKERSON ENTITIES (A) TO COMPEL TIMELY PERFORMANCE OF POST-PETITION LEASE OBLIGATIONS PURSUANT TO 11 U.S.C. § 365(d)(3) OR, (B) IN THE ALTERNATIVE, FOR THE ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO 11 U.S.C. § 503(b)(1)**

The CIT Group/Business Credit, Inc. ("CIT[1]"), as a secured lender and agent to certain other secured lenders to Lack's Stores, Incorporated, Merchandise Acceptance Corporation, Lack's Furniture Centers, Inc., and Lack Properties, Inc. (collectively, the "Debtors"), files this objection to the *Motion of the Wilkerson Entities (A) to Compel Timely Performance of Post-Petition Lease Obligations Pursuant to 11 U.S.C. § 365(d)(3) or, (B) in the Alternative, for the Allowance of Administrative Expense Claims Pursuant to 11 U.S.C. § 503(b)(1)* (the "Motion") (Docket # 231), and in support, would show the Court as follows.

**PRELIMINARY STATEMENT**

1.     The Wilkerson Entities (as defined below) are seeking to afford post-petition, priority treatment to a simple pre-petition claim for unpaid real property taxes relating to three of the Debtors' real property leases. However, application of the appropriate standard for allowance and payment of post-petition lease costs in accordance with 11 U.S.C. § 365(d)(3) shows that the Wilkerson Entities' Motion is meritless and that no portion of the requested real property taxes

---

[1] Unless otherwise noted, references to CIT herein are in CIT's capacity as agent for the Lenders.

are payable as post-petition lease costs. Furthermore, the Wilkerson Entities' request for allowance of an administrative expense should be denied, as the Wilkerson Entities have failed to carry their burden and it is premature to consider their administrative expense request in any event.

## BACKGROUND

2.  On November 16, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

**The Wilkerson Entities' Motion**

3.  On December 30, 2010, John G. Wilkerson, 4800 Franklin Avenue LLC, The Gordon Mark Wilkerson 1991 Trust, the David Collins Wilkerson 1991 Trust, the Sarah Ruth Wilkerson 1991 Trust and the Ray Hankins Wilkerson 1991 Trust (collectively, the "Wilkerson Entities") filed the Motion. The Motion seeks to compel the Debtors to pay 2010 real property taxes (the "Real Property Taxes") that relate to three leases of non-residential property: (a) Store No. 137, at 5471 50th Street, Lubbock, TX; (b) Store No. 144, at 4800 Franklin Ave, Waco, TX; and (c) Store No. 148, at 18603 Blanco Rd., San Antonio, TX (collectively, the "Wilkerson Leases") or alternatively, provide with Wilkerson Entities with an administrative claim for the Real Property Taxes that accrued with respect to the Wilkerson Leases.

**Debtors' Emergency Motion to Approve Procedures for the Sale of Real Property Leases**

4.  On December 31, 2010, the Debtors filed their *Expedited Motion to Approve Procedures and Bid Protections for the Sales and Assignments of Real Property Leases Free and Clear of Liens, Claims, Encumbrances, and Other Interests* (the "Sale Motion," Docket No. 233). Through the Sale Motion, the Debtors sought approval of a streamlined process for approving the sale, assumption and assignment of certain real property leases owned by the

Debtor, including the Wilkerson Leases.  On January 13, 2010, the Court entered an order (the "Sale Order," Docket No. 364) approving the Sale Motion.

5. The Debtors have been actively engaged in marketing and arranging for the sale and assignment of certain of the Debtors' unexpired leases of non-residential real property, including the three leases identified in the Motion.  The Debtors have engaged a real estate advisor, DJM Realty Services, LLC ("DJM"), to assist them with the sale of these lease interests.

## OBJECTION

**Only Taxes Accruing After the Petition Date May be Paid Under Section 365(d)(3)**

6. The appropriate standard to apply when assessing whether real property taxes payable as lease costs may be afforded priority treatment under 11 U.S.C. § 365(d)(3) is the "accrual" approach.  The "accrual" approach examines when benefits associated with lease costs were provided, not the date that a debtor is actually billed for such lease benefits, and only authorizes immediate payment under Section 365(d)(3) for lease costs for lease benefits that accrue after the petition date.

7. The "accrual" approach is consistent with Congress' stated purpose of enacting Section 365(d)(3) – to ensure that landlords receive "current payment" for "current services" provided.  *See In re Child World*, 161 B.R. 571, 576 (S.D.N.Y. 1993)("Moreover, the logic of requiring debtor-tenants to pay for the 'current services' their landlords must provide during the postpetition, prerejection period dictates that to the extent such payments consist of rent, they should be prorated to cover only the postpetition prerejection period").  This approach is also consistent with the Bankruptcy Code's overriding goal of providing post-petition creditors with a higher priority in the distribution of property from a debtor's estate, in order to prevent post-

petition disruption to a debtor's operations. *In re Handy Andy Home Improvement Centrs.*, 144 F.3d 1125, 1127 (7th Cir. 1998).

8. Additionally, the "accrual" approach prevents awarding absurd "windfalls" to either the debtor or the landlord due to the arbitrary timing of lease billings. *See Id.* at 1128; *In re Child World*, 161 B.R. at 576. Providing such windfalls to landlords or debtors based solely upon arbitrary billing dates would be inconsistent with the overriding bankruptcy policy of providing higher priority only to post-petition creditor transactions, and limiting compensation under Section 365(d)(3) to "current payment" for "current Services. *See Id.* In fact, if the court looked only to when a debtor was billed for lease benefits, rather than when such benefits actually accrued, the potential for such windfalls could lead lessors to manipulate the billing date for lease obligations, in order to improve the priority of their claim. *In re Phar-Mor, Inc.*, 290 B.R. 319, 326 (Bankr. N.D. Ohio 2003). Consequently, this Court should apply the "accrual" approach when evaluating the Wilkerson Entities' request for payment of Real Property Taxes for the Wilkerson Leases.

9. The Wilkerson Entities have conceded that under Texas law, their obligation to pay the Real Property Taxes arose as of January 1, 2010 and conceded that their property taxes became legally due upon receipt of their tax bills in late September and early October of 2010. Although copies of the Wilkerson Leases were not included with the Motion, upon information and belief, the Wilkerson Leases provide that the Debtors must pay all taxes and assessments as rental payments in the month after such taxes become due and payable by the Wilkerson Entities.

10. Because the Wilkerson Entities became legally obligated to pay the Real Property Taxes upon receipt of their tax bills in late September and early October of 2010, then according to the terms of the Wilkerson Leases, these tax amounts should have been due and payable well

in advance of the Petition Date on October 1 or November 1 of 2010. Thus, because these obligations accrued before the Petition Date, the Motion is entirely without merit and there can be no Real Property Taxes for 2010 payable as lease obligations pursuant to Bankruptcy Code Section 365(d)(3).

11. Moreover, even assuming *arguendo* that the Debtors did not formally become obligated to pay the Real Property Taxes until after the Petition Date, a point that is not supported by the Wilkerson Entities' own admissions in the Motion, proper application of the "accrual" method would still prohibit the Wilkerson Entities from collecting the entire balance of 2010 Real Property Taxes. Rather, only the proportionate amount of Real Property Taxes attributable to the approximately one and a half months of 2010 falling after the Petition Date could have accrued as a post-petition lease obligation payable under Section 365(d)(3).

12. The Wilkerson Entities assert that this Court should not apply the "accrual" approach when evaluating whether to compel payment of the Real Property Taxes, and should instead merely examine whether such taxes were allegedly "billed" to the Debtors after the Petition Date. Although they contend that the "weight of authority" favors their proposed "billing date" approach, the "billing date" approach has been rejected or criticized by courts within almost every federal circuit in the United States. *See In re GCP Sch. Acquisition, LLC*, 2010 Bankr. LEXIS 3839 (Bankr. D. Mass, 2010)(rejecting an analysis based on billing date and adopting the "accrual" approach); *In re Child World*, 161 B.R. at 573-574; *Healthcon Holdings, LLC v. Dunn Indus., LLC (In re Dunn Indus., LLC)*, 320 B.R. 86, 93 (Bankr. D. Md. 2005)(rejecting analysis based on billing date and applying the accrual approach); *In re Phar-Mor, Inc.*, 290 B.R. at 328 (same); *In re Handy Andy Home Improvement Centrs.*, 144 F.3d at 1127; *In re Nat'l Refactories & Minerals Corp.*, 297 B.R. 614, 619-620 (Bankr N.D. Cal. 2003);

*In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 68 (B.A.P. 10th Cir. 2002); *In re Winn-Dixie Stores, Inc.*, 333 B.R. 870 (Bankr. M.D. Fla. 2005).[2]

13.     Finally, the Wilkerson Entities have not provided sufficient information in their Motion to compel payment of the Real Property Taxes even under their improper "billing date" approach. Under that approach, the Real Property Taxes could only be payable as lease costs if they were billed after the Petition Date – i.e. if the "billing date" falls after the Petition Date. However, the only information provided in the Motion regarding the "billing date" for payment of the Real Property Taxes is that the "billing" was furnished "No later than December 21, 2010," notwithstanding the fact that the Wilkerson Entities received the underlying tax bills in "late September or early October" of 2010. This limited amount of information suggests that in fact, the "billing date" for the Real Property Taxes may have come well before the Petition Date, which could fall on any date between October and December 21, 2010.

**Real Property Taxes for the Wilkerson Leases May Not be Paid from CIT's Cash Collateral**

14.     Furthermore, the Court cannot permit the Debtors to pay the Real Property Taxes with CIT's cash collateral because it would not be able to adequately protect the value of CIT's interest in the value of its cash collateral after authorizing such a payment. Because essentially 90% of the Real Property Taxes sought to be paid relate to amounts incurred pre-petition, paying the Real Property Taxes would result in the satisfaction of a pre-petition unsecured claim that

---

[2] To date, the United States Court of Appeals for the Fifth Circuit has not issued an opinion that addresses this issue. Although the United States Bankruptcy Court for the Southern District of Texas has briefly considered the "accrual" issue in the context of rental payments, it expressly declined to assess whether the accrual approach would be appropriate when evaluating accrued property taxes. *See In re Appletree Markets*, 139 B.R. 417, 421 (Bankr. S.D. Tex. 1992). Consequently, the *Appletree Markets* case provides no guidance regarding the appropriate allocation of the Real Property Taxes at issue here. As other courts have noted, because rent is paid in advance, while taxes accrue and are paid in arrears, the "billing date" approach should not be applied to taxes, as doing so would create a disproportionate risk of providing lessors with an inequitable, burdensome "windfall." *See In re Phar Mor, Inc.*, 290 B.R. at 328.

would permanently diminish the value of CIT's cash collateral, while providing almost no offsetting post-petition benefits to CIT. Because payment of the Real Property Taxes would provide no offsetting future benefits that would adequately protect the value of CIT's cash collateral, the Court may not permit payment of the Real Property Taxes from CIT's cash collateral.

**Requests for Administrative Claims are Unfounded and Premature**

15. The Wilkerson Entities request in the alternative that the Court allow the Real Property Taxes as administrative expense claims against the Debtors' estates. However, it would be inappropriate and premature to afford administrative expense treatment to the Real Property Taxes at this time.

16. First, the Court has recently entered the Sale Order and the Debtors have been actively marketing their lease interests, including the Wilkerson Leases, for sale to other parties. In the event that the Debtors successfully arrange for the assumption, assignment, and sale of the Wilkerson Leases, the purchaser would be required to cure all prior defaults under the Wilkerson Leases, including defaults relating to the payment of the Real Property Taxes. 11 U.S.C. § 365(b)(1). Such a cure upon assumption of the Wilkerson Leases would resolve all claims for defaults thereunder and eliminate the need to allow any claim, administrative or otherwise, against the Debtors' estates for payment of Wilkerson Lease costs.

17. Additionally, the Wilkerson Entities do not assert anywhere in the Motion that they have actually paid any of the Real Estate Taxes. Given the prospect that a purchaser may ultimately pay the Real Property Taxes in connection with its purchase and cure of the Wilkerson Leases, until the Wilkerson Entities actually expend costs via payment of the Real Property Taxes, any request for payment of administrative expenses is premature at this time. *See In re Shore Co.*, 134 B.R. 572, 580 (Bankr. E.D. Tex. 1991).

18. Furthermore, for the same reasons that application of the "accrual" method would prevent the Debtors from collecting all of the Real Property Taxes as Section 365(d)(3) costs, application of the "accrual" method will similarly foreclose the Wilkerson Entities from affording administrative expense priority to *all* of the Real Property Taxes. Only post-petition costs relating to the actual, necessary preservation of the Debtors' estates may be afforded administrative expense status. 11 U.S.C. § 503(b). Only a small portion of the Real Property Taxes could have conceivably accrued after the Petition Date. Thus, the Court could not afford administrative expense priority to *all* of the Real Property Taxes.

## Prayer

WHEREFORE, CIT respectfully requests that this Court: (i) deny the relief sought in the Wilkerson Entities' Motion, or, in the alternative, condition relief upon the constraints set forth in this objection; and (ii) grant CIT such other and further relief as is just and proper.

Dated:  January 18, 2011

Respectfully submitted,

By:    */s/ Brent R. McIlwain*
      Robert W. Jones
      Texas State Bar No. 10951200
      James C. Chadwick
      Texas State Bar No. 04056050
      Brent R. McIlwain
      Texas State Bar No. 24013140
      Patton Boggs LLP
      2000 McKinney
      Suite 1700
      Dallas, Texas 75201
      Direct: 214-758-1500
      Fax: 214-758-1550

***Attorneys for The CIT Group/Business Credit, Inc.***

## CERTIFICATE OF SERVICE

This is to certify that service of this document has been made on the 18th day of January, 2011 by electronic service through the Court's transmission facilities upon those persons listed as recipients of electronic notice on the Notice of Electronic Filing document generated by the Court's System at the time of the filing of this document.

/s/ Brian Smith
Brian Smith